John D. ASKEW and Nona B.
Askew, Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE, Appellee.

No. 85–2092.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1986.
Decided Nov. 24, 1986.

E.J. Ball, Fayetteville, Ark., for appellants.

Roger M. Olsen, Washington, D.C., for appellee.

Before JOHN R. GIBSON, Circuit Judge, BRIGHT, Senior Circuit Judge, and FAGG, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

This dispute arises out of the activities of taxpayers John and Nona Askew in the oil and gas industry in Venezuela, and concerns payments Mr. Askew received under a series of letter agreements for providing knowledge, data and information in securing service contracts on oil wells and nickel deposits in Venezuela. The issues are whether the Askews could deduct the following amounts as ordinary and necessary business expenses: (1) $250,000 advanced to Askew's personal bank account that he testifies he paid to two Venezuelan nationals to reimburse them for their services in connection with a nickel deposit project; (2) two payments totalling $816,000 made to numbered Swiss bank accounts; and (3) $10,000 paid to Askew's attorney in 1972. The tax court ruled that the payments were not deductible. Askew argues that his proof of their deductibility was sufficient, and the tax court improperly required him to corroborate his own testimony with other evidence. We disagree and affirm the judgment of the tax court.

Askew worked in the oil industry in Venezuela for a number of years and developed numerous contacts in that country. He was introduced to Dr. Armand Hammer, then President and Chairman of the Board of Occidental Petroleum Corporation, and their discussions led to a number of agreements relating to oil and nickel deposit service contracts. Essentially, these agreements provided that Askew would make available to Occidental's wholly-owned subsidiary "such knowledge, data and information" as he may have for the purpose of assisting a subsidiary in obtaining oil and nickel deposit service contracts. In return, Askew would receive a percentage royalty in the operations, which Occidental had the right to purchase for a specific sum. Further details are complex and interesting but, for purposes of the issues raised in

this appeal, largely irrelevant.[1] We will therefore confine our discussion to the three issues before us.

With respect to the nickel deposit contract, the tax court found that Occidental advanced $250,000 to Askew's bank account in Fayetteville, Arkansas. It was in turn deposited into the account of his corporation, Nona Drilling. Askew did not dispute this, but testified that he paid the $250,000 to two Venezuelan nationals, Jose Maria de Castro Acosta and Israel Osorio Acosta, for services performed in connection with obtaining the contract. In addition, Askew introduced two documents into evidence: a letter dated February 14, 1970, containing a notation that $100,000 had been received by Jose Maria de Castro Acosta, to be deducted from a final payment of $1,000,000, and a "Final Release" signed September 30, 1971 by Israel Osorio Acosta acknowledging receipt of a $250,000 payment made by John D. Askew, or a company controlled by him, and releasing any further claims against Askew and specified corporations in which he had an interest. However, the documents did not specify any particular services that were performed by either of the men. The tax court characterized Askew's testimony as vague and contradictory and stated that none of the evidence was corroborated by the recipients' testimony. The payments were described only in general terms, and Askew failed to describe either the services the two men performed which would have warranted the large payments or when they performed those services. The tax court also stressed the inconsistencies between Askew's testimony and other evidence. Askew had testified that the $250,-000 payment was made when Occidental decided to cancel the letter agreement concerning the nickel deposit contract. Yet, the tax court found that on November 17, 1970, three months after the $250,000 deposit was made to Askew's account, the parties agreed to extend the time for the performance of the nickel deposit contract.

Additionally, the documents reflect payments by Askew to the two Venezuelan nationals totalling $350,000, whereas Askew claims that he paid only $250,000. Finally, the documents do not indicate in what year Askew paid or incurred the expenses, in 1970, when Occidental advanced the money, or in 1971, when the Venezuelan nationals gave the purported "Final Release." The tax court stated that these inconsistencies and gaps led it to question the accuracy of Askew's testimony.

Next, the tax court determined that Askew must include in his gross income the $3,000,000 payment made by Occidental to NOARK, Askew's wholly-owned corporation, under the series of oil drilling service contract agreements. The tax court rejected Askew's assertion that, for the entire $3,000,000, he was merely a conduit or agent for either his corporation or for two groups of Venezuelan nationals, and found that he was acting on his own behalf in signing the contracts. The tax court disagreed, however, with the Commissioner's determination that the entire amount must be included in income and ruled that Askew could deduct amounts that he could demonstrate he actually expended in connection with the project. The tax court found that Askew established the deductibility of funds totalling $2,021,200 that he received from Occidental and then paid out as ordinary and necessary business expenses. However, the tax court found that Askew's proof of the deductibility of the remaining $978,800 was insufficient. Askew disputes this finding with regard to two wire transfers to a Swiss bank located in Panama, one transfer for $616,000 and the other for $200,000, and also with regard to a $10,000 payment of attorney's fees.

The wire transfers to the Swiss bank were made to numbered accounts. Thus, the tax court found that the ownership of the accounts was not established by any credible evidence and refused to allow a deduction. Likewise, the court refused to

---

**1.** Those interested may consult the tax court opinion and the earlier opinion of this court in *Askew v. United States,* 680 F.2d 1206 (8th Cir. 1982), an action by Askew against the United States for claimed unlawful disclosure of tax records.

allow Askew to deduct the $10,000 payment made by NOARK to Askew's attorney because there was insufficient evidence establishing that these particular fees were deductible.[2] Askew's only testimony is that the $10,000 was paid for attorney's fees; he could not remember the actual purpose of the expenditure. Askew's testimony on these matters simply did not convince the tax court that the payments to the Swiss bank accounts or to Askew's attorney were made in connection with Askew's obligations under the service contract project.

In a tax case, the Commissioner's determination of a deficiency is presumptively correct, and the taxpayer has the burden of proving it to be wrong. *Welsh v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed.2d 212 (1933); *see also Interstate Transit Lines v. Commissioner*, 319 U.S. 590, 594, 63 S.Ct. 1279, 1282, 87 L.Ed. 1607 (1943); *Hawkins v. Commissioner*, 713 F.2d 347, 353 (8th Cir.1983). Here, the tax court concluded that Askew must initially include as income the $3,000,000 payment from Occidental and that he failed to prove that he was entitled to an offsetting deduction for $250,000 allegedly paid to the two Venezuelan nationals, $816,000 deposited in two numbered Swiss bank accounts, and $10,000 paid to his attorney. These determinations involve questions of fact, which are not to be disturbed unless clearly erroneous. *Yarlott v. Commissioner*, 717 F.2d 439, 441 (8th Cir.1983); *see generally Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (defining clearly erroneous standard of review as set forth in Fed.R.Civ.P. 52(a)).

Askew argues that the tax court improperly required corroboration of his uncontradicted testimony in order to overcome the presumption of correctness that is accorded the Commissioner's deficiency determinations. He asserts that such additional evidence is unnecessary when a taxpayer introduces credible and reliable testimony to the contrary. Some courts have held that a

taxpayer who presents competent and relevant credible evidence, which is sufficient to establish that the Commissioner's determination was erroneous, is not required to corroborate his testimony to satisfy his burden of proof. *See Demkowicz v. Commissioner*, 551 F.2d 929, 931 (3d Cir.1977); *see also M & W Gear Co. v. Commissioner*, 446 F.2d 841, 847 (7th Cir.1971) (tax court not free to reject reliable testimony when it is not countered by any evidence on behalf of Commissioner). However, we need not decide whether to accept this rule because such a rule assumes that the tax court has not rejected the taxpayer's testimony as being "improbable, unreasonable or questionable." *Demkowicz* at 931. Here, the tax court repeatedly characterized Askew's testimony as "contradictory," "self-serving," "vague," and "undermined" by documentary evidence. It was within the province of the tax court, as trier-of-fact, to reject Askew's testimony, *see Camien v. Commissioner*, 420 F.2d 283, 285 (8th Cir.1970), and we conclude that its decision to do so was not clearly erroneous.

We therefore affirm the judgment of the tax court.

---

**2.** Although the tax court did not specifically address this issue in its opinion, it listed the $10,000 payment to Askew's attorney with the balance of other expenses that Askew had failed to sufficiently prove were connected to the project.