T.C. Memo. 1996-8

UNITED STATES TAX COURT

EARNEST AND LAURA TILLMAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent.

EARNEST TILLMAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent.

Docket Nos. 4281-94, 13423-94.    Filed January 18, 1996.

Earnest Tillman and Laura Tillman, pro sese.

<u>Diane L. Worland</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge</u>:  Earnest Tillman and Laura Tillman petitioned the Court to redetermine respondent's determination of a deficiency in their 1989 Federal income tax, an addition thereto under section 6651(a)(1), and a penalty for negligence under section 6662(a).  Respondent reflected this determination in a notice of deficiency issued to Earnest Tillman and Laura Tillman on December 7, 1993.

Earnest Tillman petitioned the Court to redetermine respondent's determination of a deficiency in his 1990 and 1991 Federal income taxes and additions thereto under sections 6651(a)(1) and 6654. Respondent reflected this determination in a notice of deficiency issued to Earnest Tillman on April 26, 1994.

The notices of deficiency show the following deficiencies, additions to tax, and penalty:

Earnest and Laura Tillman, docket No. 4281-94

| Year | Deficiency | Additions to Tax Sec. 6651(a)(1) | Penalty Sec. 6662(a) |
|------|-----------|-----------------------------------|----------------------|
| 1989 | $27,770   | $6,967                            | $5,057               |

Earnest Tillman, docket No. 13423-94

| Year | Deficiencies | Additions to Tax | |
|------|-------------|------------------|--------|
|      |             | Sec. 6651(a)(1)  | Sec. 6654 |
| 1990 | $33,203     | $8,301           | $2,179 |
| 1991 | 53,119      | 13,280           | 3,046  |

In an amendment to her answer, respondent alleges that Mr. Tillman is liable for deficiencies for 1990 and 1991, greater than those amounts shown in the corresponding notice. The greater deficiencies, respondent states, stem from: (1) An insurance payment that Mr. Tillman received in 1990 to cover the theft of his fully depreciated truck, and (2) moneys that Mr. Tillman received in 1990 and 1991, for sales that he did not report on his Schedules C, Profit or Loss From Business. The

amendment also states that Mr. Tillman is liable for larger additions to tax on account of the increased deficiencies.

The cases were consolidated for trial, briefing, and opinion.  Following concessions, we must decide:

1.  Whether petitioners may deduct expenses on their 1989, 1990, and 1991 Schedules C, that were not allowed by respondent.

2.  Whether petitioners may deduct interest and taxes on their 1989, 1990, and 1991 Schedules A, Itemized Deductions, that were not allowed by respondent.

3.  Whether unemployment compensation received by Mrs. Tillman in 1989 is includable in petitioners' 1989 gross income.

4.  Whether Mr. Tillman's 1990 and 1991 Schedules C failed to report income from sales of $22,197 and $43,475, respectively.

5.  Whether Mr. Tillman failed to report income for 1990, stemming from his receipt of an insurance payment covering the theft of his fully depreciated truck.

6.  Whether petitioners are liable for additions to their 1989, 1990, and 1991 taxes under section 6651(a)(1).

7.  Whether Mr. Tillman is liable for additions to his 1990 and 1991 taxes under section 6654.

8.  Whether petitioners are liable for a penalty for 1989 under section 6662(a).

We hold for respondent on all issues.  Unless otherwise stated, section references are to the Internal Revenue Code in

effect for the years in issue.  Rule references are to the Tax Court Rules of Practice and Procedure.  Dollar amounts are rounded to the nearest dollar.  Earnest Tillman and Laura Tillman are separately referred to as Mr. Tillman and Mrs. Tillman, respectively.  We use the term "petitioners" to refer to Mr. Tillman, or Mr. Tillman and Mrs. Tillman, as may be appropriate.

## FINDINGS OF FACT

Petitioners are husband and wife.  They resided in LaPorte, Indiana, when they petitioned the Court.  They filed a 1989, 1990, and 1991 Form 1040, U.S. Individual Income Tax Return, using the status of "Married filing joint return".  They filed the 1989 return on April 13, 1992, and they filed the 1990 and 1991 returns on July 18, 1994.  Petitioners' 1989 tax return did not include $1,152 of unemployment compensation that Mrs. Tillman received during that year.

Petitioners' 1989 through 1991 Schedules A reported the following taxes and interest:

|          | 1989    | 1990    | 1991    |
|----------|---------|---------|---------|
| Taxes    | $3,492  | $3,492  | $843    |
| Interest | 6,477   | 5,931   | 6,064   |

Respondent allowed the following amounts:

|          | 1989    | 1990    | 1991    |
|----------|---------|---------|---------|
| Taxes    | $3,475  | $662    | $662    |
| Interest | 6,111   | 5,593   | 5,469   |

Petitioners have a trucking business, Tillman Trucking (Trucking), that they operate as a sole-proprietorship. Petitioners' 1990 Schedule C reports Trucking's gross receipts as $125,226. Included in these receipts are $98,187 from Edward C. Levy, $5,615 from Howard Belstra, and $21,424 from Crawford Materials Co. (Crawford). Not included in these receipts is another $22,197 that Trucking received from Crawford for sales to it during 1990. Petitioners' 1991 Schedule C reports Trucking's gross receipts as $157,353. All of these receipts are from Edward C. Levy. Not included in these receipts is $43,475 that Trucking received from Crawford for sales to it during 1991.

Trucking's 1989 through 1991 expenses, as reported by petitioners on their Schedules C, are as follows:

|                              | 1989     | 1990     | 1991     |
| ---------------------------- | -------- | -------- | -------- |
| Car & truck expenses         | $42,942  | – 0 –    | $12,500  |
| Truck payment                | – 0 –    | $31,710  | – 0 –    |
| Truck seats (2)              | – 0 –    | – 0 –    | 780      |
| Trucks paint                 | – 0 –    | – 0 –    | 3,500    |
| Trailer tarps                | – 0 –    | – 0 –    | 1,350    |
| Trailer payment              | – 0 –    | – 0 –    | 7,000    |
| Depreciation                 | 11,871   | 5,940    | – 0 –    |
| Insurance                    | 15,955   | 9,600    | 10,800   |
| Rent or lease                | 2,100    | 2,100    | – 0 –    |
| Vehicles, mach. equip        | – 0 –    | – 0 –    | 2,100    |
| Repairs                      | 39,440   | 20,107   | 39,123   |
| Truck wash                   | – 0 –    | 850      | 2,296    |
| Taxes & licenses             | 6,590    | 5,241    | 7,412    |
| Travel & tolls               | – 0 –    | 1,400    | 1,800    |
| Utilities                    | 4,450    | 3,350    | 2,800    |
| Fuel                         | 35,005   | 22,274   | 38,000   |
| Tires                        | 4,700    | 4,500    | 4,057    |
| Battery box                  | – 0 –    | – 0 –    | 570      |
| Oil, fuel & air filter       | 945      | 500      | 1,175    |
| Lube filter                  | 230      | 390      | – 0 –    |
| CB radio, oil, hoist, A'freeze | 745    | 1,050    | 2,070    |

| | | | |
|---|---|---|---|
| Nuts, bolts, & master | - 0 - | - 0 - | 1,600 |
| Total | 183,883[1] | 109,012 | 138,933 |

Respondent allowed the following amounts:

| | 1989 | 1990 | 1991 |
|---|---|---|---|
| Depreciation--1988 Peterbilt | $11,871 | $5,940 | - 0 - |
| Insurance | 16,056 | 10,212 | $10,800 |
| Rent or lease | 2,100 | - 0 - | - 0 - |
| Repairs | 27,720 | 12,952 | 23,321 |
| Truck wash | - 0 - | 717 | - 0 - |
| Taxes & licenses | 6,590 | 1,996 | 4,474 |
| Utilities | 4,631 | 3,672 | 3,672 |
| Fuel | 35,005 | 22,274 | 39,054 |
| Tires | 5,202 | 5,128 | 6,022 |
| Oil, fuel & air filter | 945 | 751 | - 0 - |
| Lube Filter | 230 | 390 | - 0 - |
| CB radio, oil, hoist, A'freeze | 745 | 1,050 | 2,078 |
| Nuts, bolts, & masters | - 0 - | - 0 - | 860 |
| Truck interest | 10,941 | 6,103 | 1,927 |
| Total | 122,036 | 71,185 | 92,208 |

Respondent did not allow payments of $42,942 and $31,710
reported by petitioners for 1989 and 1990, respectively, as
expenses of a 1986 Peterbilt truck and a 1988 Peterbilt truck.[2]
Mr. Tillman acquired the 1986 Peterbilt in January 1986, and he
began using it in Trucking's business during that year.  In
acquiring the 1986 Peterbilt, Mr. Tillman signed three agreements
with Pro Am Leasing, Inc. (Pro Am).  The first agreement was
entitled "MASTER LEASE/PURCHASE AGREEMENT".  This agreement

---

[1] Petitioners erroneously reported that these expenses
totaled $183,883.  The total is actually $164,973.

[2] However, she did allow petitioners to deduct the portion
of these payments that she determined was interest.  She also let
petitioners deduct the depreciation that they reported for the
1988 Peterbilt.

stated that Pro Am was "renting" the 1986 Peterbilt to Mr. Tillman, and that he was paying Pro Am 60 months of "rent" at $1,604 per month.[3]  It also stated:  (1) Mr. Tillman was liable for all taxes, fees, and other charges on the truck; (2) Mr. Tillman was responsible for maintaining the truck; (3) Mr. Tillman had title to the truck; (4) Mr. Tillman was responsible for insuring the truck, at his own expense; (5) Mr. Tillman assumed and bore the entire risk of loss on the truck, including loss from damage, theft, or destruction; and (6) Mr. Tillman "shall have and shall be deemed to have properly exercised an option to purchase" the truck upon his timely payment of all monthly "rents" due under the agreement.  Under the second agreement, Mr. Tillman was "treated as the purchaser of the [1986 Peterbilt] for purposes of the investment credit".  Under the third agreement, Mr. Tillman acknowledged that the "lease" was assigned to Michigan National Bank for collection of the "rent".

Immediately after the acquisition, Mr. Tillman applied to the State of Michigan for title to the 1986 Peterbilt, stating that "I am the purchaser of the [1986 Peterbilt]".  Mr. Tillman also registered the truck in Indiana, stating that he was the owner, and the State of Indiana issued him a certificate of title.  In 1987, in his stated capacity as owner of the 1986

---

[3] Pro Am had purportedly purchased the truck from the seller in January 1987, at a total cost of $85,227.

Peterbilt, Mr. Tillman agreed to lease the truck to Indian Trucking Co., Inc., and he signed a credit application with Pro Am.

For at least the 1-year period ended December 13, 1990, Mr. Tillman insured the 1986 Peterbilt with Canal Insurance Co. (Canal). On July 19, 1990, Mr. Tillman notified Canal that the truck had been stolen on June 13, 1990. Mr. Tillman's written notification states: "When your policy was issued to the Insured [Mr. Tillman], Insured was the sole and unconditional owner of the [1986 Peterbilt]." The truck was worth $43,500 at the time of its theft, and Mr. Tillman's policy with Canal provided for a $1,000 deductible on the theft. For Federal income tax purposes, the truck was fully-depreciated; i.e., Mr. Tillman had no basis in it.

Later that year, Canal issued a $42,500 check payable to Mr. Tillman and Michigan National Bank to cover the theft, and Mr. Tillman, in his stated capacity as owner of the 1986 Peterbilt, transferred his title in the truck to Canal. Pro Am also certified that Mr. Tillman was the owner of the truck, and that its security interest in the truck was terminated. On or about April 1, 1990, Mr. Tillman purchased a 1982 Mack truck for $8,500, to replace the 1986 Peterbilt.

With respect to the 1988 Peterbilt, Mr. Tillman acquired that truck in 1987 from Peterbilt Motors Co. (Motors). Motors issued Mr. Tillman a certificate for it, reflecting that Motors

sold him the truck subject to the security interests of National Bank of Detroit and Pro Am.[4]  A document was filed with the State of Indiana, reflecting that Mr. Tillman purchased the 1988 Peterbilt truck in 1987 for $71,944.  Later that year, the State of Indiana issued a certificate of title to Mr. Tillman showing that he owned the 1988 Peterbilt, and that the lienholders were National Bank of Detroit and Pro Am.  Pro Am issued Mr. Tillman a statement showing that his interest charges would be $10,513 for 1988, if he timely made all of his required payments.

## OPINION

Petitioners must prove that respondent's determinations set forth in her notices of deficiency are incorrect.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Respondent must prove the increased deficiencies asserted in her amendment to answer.  Rule 142(a); Estate of Bowers v. Commissioner, 94 T.C. 582, 595 (1990).

### 1.  Additional Schedule C Expenses

An individual may deduct all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade

---

[4] Mr. Tillman had borrowed $80,157 from Pro Am to acquire the 1988 Peterbilt.  The loan agreement states:

> Borrower warrants and agrees that: * * * Borrower is the owner of the Collateral free from any liens, encumbrances or security interests except for the security interest granted hereby, and will defend the Collateral against all claims and demands of all persons at any time claiming the same or any interest therein; * * *

or business.  Sec. 162(a).  Whether expenditures are "ordinary" and "necessary" generally are questions of fact.  <u>Commissioner v. Heininger</u>, 320 U.S. 467 (1943).

We agree with respondent that petitioners may not deduct any expenses on their Schedules C, other than the ones she has allowed.  Petitioners have not persuaded us that they incurred any other expenses (including the disallowed amounts reported on their tax returns), or, even if they had, that these other expenses were ordinary and necessary under section 162(a).  See also sec. 6001 (petitioners must keep sufficient records to substantiate any deduction otherwise allowable by the Code).

With respect to the 1986 and 1988 Peterbilts, respondent determined that Mr. Tillman purchased these trucks.  Petitioners claim that Mr. Tillman leased them.  To support their claim, petitioners rely primarily on the fact that some of the documents surrounding the acquisition use the terms "lease" or "rent".  We are not persuaded.  Whether a transaction is a sale or a lease does not rest on the name given to the transaction by the parties thereto, either in or out of the surrounding documents.  What is critical is the intent of the parties.  We must ask ourselves: "What did the parties to the transaction believe the legal effect of the transaction to be?"  <u>M & W Gear Co. v. Commissioner</u>, 446 F.2d 841, 844 (7th Cir. 1971), affg. in part, revg. in part, and remanding 54 T.C. 385 (1970).  With this in mind, we are unpersuaded that Mr. Tillman's acquisitions of the Peterbilts

were intended to be other than purchases.  The acquisition documents, but for the use of the terms "rent" and "lease", contain language that is more indicative of purchases than of leases, and Mr. Tillman, by his own actions, represented himself to third parties (including the Internal Revenue Service) as a purchaser of the trucks.  We also find relevant the facts: (1) The agreement underlying the acquisition of the 1986 Peterbilt provided that Mr. Tillman would "purchase" the truck upon his payment of the total "rent", and (2) the total "rent" was a close approximation of the total amount that Mr. Tillman would have had to have paid had he financed the truck's purchase with a financial lender.[5]  The fact that a purported lessee will pay a nominal fee to acquire "leased" property upon the expiration of the "lease" tends to show that the property was actually sold to him or her, M & W Gear Co. v. Commissioner, 54 T.C. 385, 395 (1970), affd. on this issue 446 F.2d 841 (7th Cir. 1971), and the fact that no payment is required, as is true with the case at hand, tends to show the same.  We hold for respondent on this issue.[6]

---

[5] The parties have stipulated that Mr. Tillman would have been required to make 60 monthly payments of $1,604, had he purchased the 1986 Peterbilt with a 20-percent downpayment and financed the rest at an interest rate of 14.5 percent.

[6] We also note that Mr. Tillman's rental payments are not deductible under sec. 162(a)(3).  Sec. 162(a)(3) allows a deduction for rental payments for the use or possession of property to which the taxpayer has not taken title, or is not
(continued...)

## 2.  Additional Schedule A Deductions

For reasons similar to those stated above, we agree with respondent that petitioners may not deduct more interest or taxes on their Schedules A than she has allowed.  We hold for respondent on this issue.

## 3.  Taxability of Unemployment Compensation

Gross income includes unemployment compensation.  Sec. 85(a).  Given the facts that Mrs. Tillman received $1,152 of unemployment income in 1989, and that petitioners did not report this amount on their 1989 tax return, we must hold for respondent on this issue.

## 4.  Unreported Sales Income

Gross income includes income from whatever source derived. Sec. 61(a).  Petitioners agree that Trucking received $43,621 and $43,475 in gross receipts from Crawford during 1990 and 1991, respectively, and that petitioners' tax returns reported only $21,424 of these receipts for 1990 and none of them for 1991.  We hold that petitioners failed to report $22,197 in sales income for 1990, and $43,475 in sales income for 1991.

## 5. Receipt of Insurance Proceeds

A taxpayer realizes gain on a conversion (e.g., a loss) to the extent that the insurance proceeds connected thereto exceed the adjusted basis of the underlying property.  Sec. 1001(a).

---

[6](...continued)
taking title, or in which he has no equity.

A taxpayer may elect to defer recognition of the gain to the extent that the insurance proceeds do not exceed the cost of qualifying property that is purchased to replace the converted property. Sec. 1033(a)(2). A taxpayer's failure to recognize the gain is considered an election under section 1033(a)(2). Sec. 1.1033(a)-2(c)(2), Income Tax Regs.

Respondent alleges that Mr. Tillman should have recognized a $34,000 gain in 1990 on account of his insurance recovery. We agree. In 1990, he received $42,500 from Canal to cover the theft of the 1986 Peterbilt, and he had no basis in the truck for Federal income tax purposes. Thus, Mr. Tillman realized a $42,500 gain. Because $8,500 of this gain is considered deferred, due to the fact that he purchased the Mack truck in 1990, he should have recognized the remaining gain of $34,000 in 1990. He failed to do so. We hold for respondent on this issue.

6. Addition to Tax Under Sec 6651(a)(1)

Respondent determined additions to tax under section 6651(a)(1) in each year, asserting that petitioners failed to file timely a Federal income tax return. We have found that all of petitioners' tax returns were filed untimely; they were filed outside of the periods of time mentioned in section 6072(a) and 6081(a). In addition, the record does not show that any of the untimely filings was due to reasonable cause and not due to willful neglect. Thus, we sustain respondent's determination that petitioners are subject to additions to tax under section

6651(a)(1) in each year.  See <u>Waitzkin v. Commissioner</u>, T.C. Memo. 1992-216.

## 7.  Additions to Tax Under Sec. 6654

Respondent determined additions to Mr. Tillman's 1990 and 1991 taxes under section 6654, asserting that he failed to pay estimated tax.  An addition to tax under section 6664 is mandatory unless one of the exceptions contained in that section applies.  <u>Recklitis v. Commissioner</u>, 91 T.C. 874, 913 (1988). None of these exceptions apply.  Thus, we sustain respondent on this issue.

## 8.  Penalty Under Sec. 6662(a)

Respondent determined a penalty under section 6662(a) for petitioners' 1989 taxable year, asserting that their underpayment of income tax for 1989 was due to negligence or intentional disregard of rules or regulations.  Section 6662(a) imposes a penalty equal to 20 percent of the portion of the underpayment attributable to negligence.

Negligence is defined to include any failure to make a reasonable attempt to comply with the provisions of the Code. Sec. 6662(c).  Negligence has also been defined to include a lack of due care or a failure to do what a reasonable and ordinarily prudent person would do under the circumstances.  <u>Accardo v. Commissioner</u>, 942 F.2d 444, 452 (7th Cir. 1991), affg. 94 T.C. 96 (1990).  Petitioners must prove that respondent's determination of negligence is erroneous.  <u>Id.</u> at 452; <u>Bixby v.</u>

- 15 -

Commissioner, 58 T.C. 757, 791-792 (1972).  They have failed to do so; thus, we sustain respondent on this issue.

To reflect the foregoing,

Decisions will be

entered under Rule 155.