# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1398

_____

Gerald E. Toberman and Nancy J.    *
Toberman,    *
   *
        Appellants,    *
   *   On Appeal from the
     v.    *   United States Tax Court.
   *
   *
Commissioner of Internal Revenue,    *
   *
   *
        Appellee.    *

_____

Argued: October 18, 2001
Submitted After
Supplemental Briefing: April 22, 2002
Filed: June 20, 2002

_____

Before BOWMAN, RICHARD S. ARNOLD, and HANSEN, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

     Appellant Gerald E. Toberman[1] appeals from a decision of the United States Tax Court upholding a determination by the Internal Revenue Service that he owed

_____

[1]Appellant Nancy J. Toberman, Mr. Toberman's wife, is a party in this case only because she filed a joint income tax return with Mr. Toberman.

$1,194,503 in income tax and $238,900.60 in penalties for the tax year 1993. In reaching its decision, the Court held that in 1993 Mr. Toberman realized $2,781,810 in income from discharge of indebtedness, also known as cancellation-of-debt income, that Mr. Toberman did not establish that he was insolvent, so as to come under the insolvency exception to this sort of income, that the taxpayer did not establish that his wholly owned Subchapter S corporations had net operating losses of $3,992,234 for the tax years 1986 to 1991, so as to entitle him to net-operating-loss carryforwards in that amount, and that he should pay a twenty per cent. penalty for underpayment of taxes.

For the reasons that follow, we reverse the Tax Court's decision with respect to the discharge-of-indebtedness income, affirm the Tax Court's decision with respect to the net-operating-loss carryforwards, and affirm the imposition of a twenty per cent. penalty on the amount of underpayment. We remand the case to the Tax Court to recalculate Mr. Toberman's tax liability and the amount of the penalty for underpayment based on the recalculated tax liability.

I.

From 1986 to 1993, Mr. Toberman was the sole shareholder of Bonnevista Terrace, Inc., and Castle Towers, Inc., corporations located in Minnetonka, Minnesota, that elected to be taxed under Subchapter S of the Internal Revenue Code. 26 U.S.C. §§ 1361–1379. Bonnevista Terrace and Castle Towers owned and operated mobile home parks in Minnesota and Indiana.

Bonnevista Terrace filed its last federal corporate income tax return for the tax year 1991. At the end of 1990, Bonnevista Terrace's balance sheet, submitted with

its tax return, reflected loans to Mr. Toberman in the amount of $2,148,481.[2] Castle Towers filed its last federal corporate income tax return for the tax year 1990. At the end of 1990, Castle Towers' balance sheet reflected loans to Mr. Toberman in the amount of $633,329. The record does not reveal how or when these corporations ceased to exist.

In 1990, Mr. Toberman filed a petition for relief under Chapter 11 of the Bankruptcy Code. On May 21, 1991, the bankruptcy court dismissed the case because of Mr. Toberman's failure to file a disclosure statement and plan of reorganization. Between 1990 and 1992, a number of judgments were entered against Mr. Toberman in favor of various creditors.

On March 3, 1993, Mr. Toberman submitted to the IRS Form 433-A, Collection Information Statement for Individuals (CIS). On the CIS, he reported assets of $50 in cash and real estate worth $850,000, subject to encumbrances of $460,000, and liabilities of $400 in credit card debt, for a net worth of $389,650. He did not report any debts to Bonnevista Terrace or Castle Towers on the CIS; nor did he report any judgments against him.

On his 1993 income tax return, taxpayer claimed a net-operating-loss deduction of $3,992,234, composed of net-operating-loss carryforwards from prior years in the following amounts: $134,414 (1986); $424,283 (1987); $306,907 (1988); $1,627,007 (1989); $1,417,445 (1990); and $82,178 (1991). He did not report any income from discharge of indebtedness.

---

[2]At the end of 1991, Bonnevista Terrace's balance sheet reflected loans to Mr. Toberman in the amount of $2,244,164. In its brief, the IRS asserts that it could have assessed income using the (larger) amount of indebtedness at the end of 1991, but that it used the amount of indebtedness at the end of 1990 instead. Commissioner's Brief at 7, n.9.

Basing its decision on the last income tax returns of Bonnevista Terrace and Castle Towers and on taxpayer's CIS and 1993 income tax return, the IRS determined that the debts that taxpayer owed to Bonnevista Terrace and Castle Towers had been discharged and, therefore, that taxpayer had realized unreported income in the 1993 tax year in the amount of $2,781,810. The IRS also disallowed taxpayer's claimed net-operating-loss deductions. As a result of these adjustments, the IRS determined that taxpayer was liable for a deficiency in tax in the amount of $1,194,503. The IRS also determined that taxpayer was liable for an accuracy-related penalty of twenty per cent. of the underpayment, or $238,900.60, under 26 U.S.C. § 6662(a).

Following trial in the Tax Court, the Court, in an opinion dated July 24, 2000, upheld the IRS's determinations. Toberman v. Commissioner, 80 T.C.M. (CCH) 81 (2000). The Court held that the IRS's notice of deficiency was entitled to a presumption of correctness. Regarding the discharge-of-indebtedness income, the Court held that taxpayer's CIS and the various income tax returns were sufficient to establish that the IRS's determination was not arbitrary or capricious, and that taxpayer had not overcome the presumption of correctness. The Court also determined that taxpayer was not entitled to the exemption from discharge-of-indebtedness income that applies when the taxpayer is insolvent, 26 U.S.C. § 108(a)(1)(B), because the CIS established that taxpayer had a positive net worth. Moreover, the Court held, the CIS actually underreported taxpayer's net worth because it omitted his ownership interest in another business, Fantastic Foods, Inc., as well as a debt in the amount of $457,072 that Fantastic Foods reported owing him on its 1992 tax return.

Regarding the net-operating-loss carryforwards, the Court held that the IRS need not have provided even a minimal evidentiary foundation to disallow the deductions, and that taxpayer bore the burden of proving entitlement to the deductions. It found that the evidence offered by taxpayer—individual income tax returns for the years in which the losses arose, S corporation returns showing the

origin of part of the losses, and the testimony of taxpayer's accountant—did not meet this burden.

Finally, the Court held that the accuracy-related penalty was appropriate on account of taxpayer's failure to establish either that he kept adequate books and records or that he provided complete information to his accountant.

## II.

We must decide whether the Tax Court was correct in approving (1) the assessment of tax liability based on discharge-of-indebtedness income, (2) the disallowance of the net-operating-loss carryforwards, and (3) the imposition of a penalty.

## A.  The Discharge-of-Indebtedness Income

Section 61(a) of the Internal Revenue Code provides that gross income includes all income from whatever source derived, including "income from discharge of indebtedness."  26 U.S.C. § 61(a)(12).  This treatment of discharge-of-indebtedness income parallels the Code's treatment of loans:  a taxpayer does not include borrowed funds in gross income, even though such funds increase assets, because the taxpayer has a corresponding liability to repay the loans.  The justification for taxing discharge-of-indebtedness income is that the elimination of the liability (the obligation to repay the funds previously borrowed) makes available to the taxpayer assets that were previously offset by liabilities.  See United States v. Kirby Lumber Co., 284 U.S. 1, 3 (1931).

However, the Code provides exceptions to this general rule.  Section 108(a)(1) states:

Gross income does not include any amount which (but for this subsection) would be includible in gross income by reason of the discharge (in whole or in part) of indebtedness to the taxpayer if—(A) the discharge occurs in a title 11 case, (B) the discharge occurs when the taxpayer is insolvent, or (C) the indebtedness discharged is qualified farm indebtedness.

26 U.S.C. § 108(a)(1). For purposes of subsection (B), the insolvency exception, " 'insolvent' means the excess of liabilities over the fair market value of assets." Id. § 108(d)(3). "[A]n insolvent debtor realizes income just to the extent his assets exceed his liabilities after the cancellation." Commissioner v. Tufts, 461 U.S. 300, 310 n.11 (1983). This exception recognizes the fact that an insolvent debtor does not suddenly acquire assets simply because an obligation to pay off loans has been removed.

Regarding the discharge-of-indebtedness income, taxpayer argues that the IRS's assessment was arbitrary and capricious and so is not entitled to the presumption of correctness to which IRS assessments usually are entitled,[3] that the Tax Court erred by continuing to rely on the presumption of correctness and by failing to shift the burden of proof to the IRS even after taxpayer presented evidence refuting the accuracy of the assessment, and that taxpayer produced sufficient evidence of his insolvency to qualify for the insolvency exemption to discharge-of-indebtedness income. The IRS counters that it did present evidence of discharge-of-indebtedness income—the corporate tax returns and the CIS statement—so as to be

_____

[3]Both parties agree that 26 U.S.C. § 7491, which was enacted as part of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, 112 Stat. 726, § 3001(a), and places the burden of proof on the IRS in certain circumstances, applies only to court proceedings arising in connection with examinations commencing after July 22, 1998. Act § 301(c). Because the examination in this case was commenced prior to that date, § 7491 does not apply, again as both parties agree.

entitled to the presumption of correctness, and that none of the evidence presented by taxpayer established that he was insolvent at the time that he realized the discharge-of-indebtedness income (when he filed the CIS statement indicating positive net worth and no debt).

Focusing on the insolvency exception, the Tax Court found, relying on the CIS, that the exception did not apply. The Court determined that taxpayer had a positive net worth in 1993 of approximately $389,650, with assets comprising $50 in cash and $850,000 in real estate (subject to encumbrances of $460,000) and with his sole liability being $400 in credit card debt. Toberman, 80 T.C.M. (CCH) 81, slip op. at 5 & n.7. The Court further found that taxpayer's contention that, despite his statement on the CIS, he was indeed insolvent by at least two to three million dollars was "vague and conclusory" and that taxpayer "has failed to provide any details . . . as to . . . the specific liabilities he claims to have owed." Id. at 15. Moreover, the Court concluded that the CIS actually understated taxpayer's assets because it did not include his ownership interest in Fantastic Foods and the $457,072 debt that Fantastic Foods owed to him. Id.

Mr. Toberman contends that it was improper for the Court to disregard his and his accountant's uncontradicted testimony regarding his insolvency. Moreover, he argues that he did in fact introduce specific liabilities into evidence, namely actual judgments showing that he owed millions of dollars. Tax Court Exhibits 25-P, 26-P, 29-P, 33-P, 34-P, and 35-P. He also testified as to millions of dollars of additional judgments against him. Finally, he contends that Fantastic Foods was itself insolvent and lacked any obvious means to repay him for its debt and, therefore, that his ownership interests in the equity and debt of the company had little or no market value. See 26 U.S.C. § 108(a)(1)(B) (noting that, for purposes of insolvency exception, assets are judged at "fair market value").

We find taxpayer's arguments persuasive. Although the Tax Court stated that taxpayer failed to provide evidence of specific liabilities, the Court also noted that "the record contains notices of judgment against petitioner." Toberman, 80 T.C.M. (CCH) 81, slip op. at 13. The Court referred specifically to a "Federal District Court order, dated Sept. 22, 1992, entering judgment of $832,806 against petitioner[]." Id. at 13 n.11. Moreover, the parties stipulated that various trial court exhibits, presented by taxpayer, were true and correct copies of judgments entered against Mr. Toberman. Joint Appendix 22-23. These judgments were entered on the following dates in the following amounts: September 23, 1992, $835,772.37; June 22, 1992, $969,063.00 (not paid as of January 26, 1995); May 8, 1992, $206,064.04; September 11, 1991, $1,205,600.34; August 9, 1991, $408,528.65. These judgments alone total $3,625,028.40, far greater than the taxpayer's net worth as determined by the Court, $389,650, even considering the loan from Fantastic Foods, $457,072, and a reasonable ownership interest in the company.

In response, the IRS contends that, "[w]ith the exception of one of the judgments, [footnote 16] there is no evidence that they were extant and enforceable in [March] 1993." Footnote 16 states: "Ex. 25-P, a judgment in the amount of $969,063, includes as an attachment a writ of execution issued on January 26, 1995." Commissioner's Brief 29 & n.16. Thus, even were we not to consider the four judgments that the IRS contends were somehow satisfied by March 1993, the one judgment that the IRS admits was extant in March 1993, by itself, is greater than the fair market value of taxpayer's assets at that time. Moreover, it is not reasonable to conclude, in the absence of any evidence, that the judgments had been satisfied in the one to two year period prior to discharge of taxpayer's debt. Therefore, we hold that the Court's determination that taxpayer was not insolvent at the time of the discharge of his debt to his Subchapter S corporations was clear error. It is our definite and firm conviction that taxpayer met the insolvency exception to discharge of indebtedness income. The Tax Court's demand for explicit proof that recent judgments remained unsatisfied, was, in the circumstances of this case, wholly unreasonable.

## B.  The Net-Operating-Loss Carryforwards

Taxpayer also argues that the Tax Court erred by sustaining the IRS's disallowance of his claimed net-operating-loss carryforwards.  He contends that the IRS bore the burden of establishing that the claimed deductions were erroneous, that he provided sufficient evidence to be entitled to the deductions, and that the IRS provided no evidence to support its disallowance.

Regarding the burden of proof, taxpayer is incorrect.  The taxpayer bears the burden of establishing entitlement to claimed deductions.  26 U.S.C. § 7453; Tax Court Rule 142(a); Bennett Paper Corp. v. Commissioner, 699 F.2d 450, 453 (8th Cir. 1983).  In this case, the original books and records of the two S corporations were lost, and taxpayer furnished no explanation for their absence.  In their place, taxpayer submitted his individual tax returns for the years 1986 to 1992, some of the relevant S corporations' tax returns, and the testimony of his accountant.  The Tax Court held that this evidence did not meet taxpayer's burden of proof.

We hold that the decision of the Tax Court—that taxpayer failed to sustain his burden of proof—is not clearly erroneous.  The trial court is not required to accept even uncontradicted testimony.  Askew v. Commissioner, 805 F.2d 830, 832 (8th Cir. 1986).  Here, the lack of tax returns from the Subchapter S corporations for all of the relevant years, in addition to the complete absence of underlying record evidence, affected the Tax Court's determination.  And it was within the Court's discretion not to credit the testimony of taxpayer and his accountant.

## C.  The Penalty

Finally, the Tax Court upheld the IRS's assessment of an accuracy-related penalty under 26 U.S.C. § 6662(a).  This section imposes a penalty in the amount of twenty per cent. of the underpayment of tax that is attributable to "[n]egligence or

disregard of rules or regulations" or "[a]ny substantial understatement of income tax" on the part of the taxpayer. Id. § 6662(b). Taxpayers otherwise subject to this section are allowed a "[r]easonable cause exception," that prevents imposition of a penalty if a taxpayer can show both reasonable cause for the underpayment and good faith. Id. § 6664(c). The Tax Court held that taxpayer failed to prove either that he provided his accountant complete information for preparing his 1993 federal income tax return, or that he kept adequate books and records to substantiate the net-operating-loss deductions. Moreover, the Court held, he failed to show reasonable cause or that he acted in good faith.

Taxpayer argues that his accountant not only prepared the tax return, but also kept the books and records for the Subchapter S corporations, so there was nothing further for him to provide to the accountant. He also argues that he kept excellent records but that the records were lost, and that any missing records were beyond the three-year statute of limitations contained in 26 U.S.C. § 6501. The IRS counters that the accountant worked only part time for taxpayer in 1993 and was not in control of the books and records, that taxpayer has offered no explanation for the loss of the records, and that taxpayer's and his accountant's testimony is insufficient evidence. Moreover, the IRS contends, § 6501 bars the IRS only from assessing taxes on tax years more than three years old, not from requiring evidence for deductions claimed from prior years in an assessment of a tax return less than three years old. We review the Tax Court's decision for clear error. Parrish v. Commissioner, 168 F.3d 1098, 1102 (8th Cir. 1999).

We hold that the Tax Court did not clearly err. There is sufficient justification—the lack of documentary evidence and the lack of an explanation for the disappearance of the records—for the Tax Court to determine that taxpayer was negligent in failing to keep adequate books and records and that he failed to meet the requirements of the reasonable-cause exception. However, although the assessment of a twenty per cent. penalty was not improper, the exact amount of the penalty will

need to be recalculated in light of the change in taxpayer's tax liability based on our holding that there was no discharge-of-indebtedness income.

## III. Conclusion

For the foregoing reasons, the judgment of the Tax Court is reversed with respect to the discharge-of-indebtedness income and affirmed with respect to the disallowance of the net-operating-loss carryforwards and the imposition of a twenty per cent. penalty on any underpayment. The case is remanded to the Tax Court for recalculation of taxpayer's tax liability and the amount of the penalty.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.