# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

————————

No. 06-1212

————————

| | | |
|---|---|---|
| Wayne Payne; Dorene J. Payne, | * | |
| | * | |
| Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | Tax Court. |
| | * | |
| Commissioner of Internal Revenue, | * | [UNPUBLISHED] |
| | * | |
| Appellee. | * | |

————————

Submitted: December 29, 2006
Filed: January 9, 2007

————————

Before WOLLMAN, HANSEN, and COLLOTON, Circuit Judges.

————————

PER CURIAM.

Wayne and Dorene Payne appeal the Tax Court's[1] judgment finding them liable for tax deficiencies totaling $157,088, and fraud penalties totaling $117,815.25, related to underreported income for the tax years 1993, 1994, and 1995. We affirm.

The Paynes owned and operated a roofing business known as HRDC Construction, which operated as a partnership in 1993 and 1994 and as a Subchapter

——————————

[1]The Honorable Joseph R. Goeke, United States Tax Court Judge.

S Corporation in 1995. The Paynes owned 100% of the business, either jointly or individually, for each year at issue. Mr. Payne worked on the job sites and Mrs. Payne worked in the business's office. They also employed a bookkeeper, Cari Enerson, and employed professional tax return preparers to prepare the partnership returns for 1993 and 1994, the S Corporation return for 1995, and their joint personal tax returns for each of the years at issue. Because HRDC operated as either a partnership or an S Corporation during the relevant time, all of its income flowed through to the Paynes' personal tax returns.

HRDC recorded its sales in a sales journal and in an accounts receivable journal. HRDC provided written bids to customers and performed the work agreed upon in the bid after the customer signed the bid and provided a 50% down payment. Small jobs outside of the bid sometimes arose during the performance of the work. The customer generally paid the employees directly for these small jobs, referred to at HRDC as "extras" and recorded in an "extras" journal. Checks for the "extras" were usually cashed at a Money Exchange and were not deposited into HRDC's business account. The Paynes told Vern Gunderson, their professional tax return preparer, that all of HRDC's income went through its business bank account. Mr. Gunderson used the bank records, which did not include the income from the "extras," to calculate the income included on HRDC's tax returns.

HRDC's tax returns for 1993, 1994, and 1995 were audited in 1997. Mr. Payne originally denied receiving any "extras" income, stating that all "extras" income went to the employee performing the job. He also denied cashing any HRDC checks at the Money Exchange, surmising that his employees must have stolen the checks and cashed them. Mr. Payne eventually admitted cashing checks for the "extras" income and pleaded guilty in 2001 to filing a false tax return for his 1994 individual federal income tax return. The Commissioner issued a notice of deficiency to the Paynes on April 17, 2003, related to the 1993, 1994, and 1995 returns. The Paynes filed a petition in the United States Tax Court contesting the deficiencies and penalty

assessments. Following a bench trial, the Tax Court upheld the IRS's calculation of underreported income and fraud penalties, except for the fraud penalties related to unreported deposits to the Paynes' personal bank accounts. The Paynes appeal.

We review the tax court's fact-findings for clear error and its legal conclusions *de novo*. Bean v. Comm'r, 268 F.3d 553, 556 (8th Cir. 2001). The reasonableness of the method used by the Commissioner to reconstruct a taxpayer's records is a fact-finding subject to review for clear error, Day v. Comm'r, 975 F.2d 534, 537 (8th Cir. 1992), as is a finding of fraud, Morse v. Comm'r, 419 F.3d 829, 832 (8th Cir. 2005).

The Commissioner's determination of a tax deficiency is presumed to be correct, and the taxpayer bears the burden of proving that the Commissioner's determination of taxable income is arbitrary or erroneous. Day, 975 F.2d at 538.[2] The Commissioner must calculate taxable income using the accounting method generally used by the taxpayer unless the taxpayer's method of accounting does not "clearly reflect [his] income," 26 U.S.C. § 446(b), in which case the Commissioner may reconstruct the taxpayer's income using any method which, in the Commissioner's opinion, accurately reflects the taxpayer's income, id. "[W]here the taxpayer files income tax returns which substantially understate income, an assessment of deficiency is 'necessarily an estimate.' As long as the reconstruction method is 'reasonable and logical,' [the taxpayer] may not complain of its inevitable inaccuracies." Page v. Comm'r, 58 F.3d 1342, 1347 (8th Cir. 1995) (internal citations omitted).

The Tax Court did not err in accepting the Commissioner's use of HRDC's sales journal to calculate HRDC's income. The Paynes argued to the Tax Court that the

---

[2]Section 7491 of the Internal Revenue Code, 26 U.S.C. § 7491, which shifts the burden to the Commissioner in some circumstances, does not apply because the examination of the tax returns commenced prior to § 7491's effective date. See Toberman v. Comm'r, 294 F.3d 985, 988 n.3 (8th Cir. 2002).

sales journal for any given year included contracted jobs for which they had not yet been paid and that therefore those jobs should not have been included in their cash basis income. The Tax Court rejected use of the accounts receivable journal, as advocated by the Paynes, because it was "disorganized, illegible in places, and, according to Mrs. Payne's testimony, incomplete." (Add. at 15.) The court found the sales journal, by contrast, to clearly and legibly list the amounts charged for jobs in 1994. The Paynes further failed to clarify the entries in the accounts receivable journal or explain which jobs or amounts included in the sales journal should have been excluded from the 1994 gross income calculation. Without an accurate cash-based journal from which to calculate income, the Tax Court did not clearly err in upholding the Commissioner's use of the more complete sales journal to reconstruct HRDC's income.

Likewise, the Tax Court did not clearly err in upholding the fraud penalties. "Because fraudulent intent is rarely established by direct evidence, it may be established through circumstantial evidence." McGraw v. Comm'r, 384 F.3d 965, 971 (8th Cir. 2004). While there was conflicting evidence about whether the Paynes told Ms. Enerson not to disclose the cashed checks to the tax preparers, credibility determinations are for the trier of fact. Senda v. Comm'r, 433 F.3d 1044, 1047 (8th Cir. 2006) (credibility determinations made by a tax court "are nearly unreviewable"). Mr. Payne also told the return preparers that HRDC "put everything in the bank" (Appellee's Br. at 7); he lied to the revenue agent by stating that 100% of the "extras" income went to the employee performing the work; and he denied cashing checks at the Money Exchange. Mr. Payne also pleaded guilty to filing a false tax return. This evidence provided ample support for a finding of fraudulent intent. See Morse, 419 F.3d at 832-33 (considering "badges of fraud" such as substantially understated and unexplained income for several years, providing incomplete information to a tax return preparer, and being convicted of filing a false tax return).

The Tax Court's judgment is affirmed.

_____