T.C. Memo. 2005-130


UNITED STATES TAX COURT


WAYNE PAYNE AND DORENE J. PAYNE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 6311-03.                Filed May 31, 2005.


<u>Thomas E. Brever</u>, for petitioners.

<u>David W. Sorensen</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


GOEKE, <u>Judge</u>:  Respondent determined deficiencies in petitioners' 1993, 1994, and 1995 Federal income taxes of $29,881, $81,985, and $45,222, respectively.  Respondent also determined that petitioners were liable for fraud penalties under

section 6663[1] for 1993, 1994, and 1995 of $22,410, $61,488.75, and $33,916.50, respectively.  The issues for decision are:

(1)  Did respondent issue the notice of deficiency before the expiration of the period of limitations on assessment?  We hold that petitioners filed false or fraudulent returns with the intent to evade tax for 1993, 1994, and 1995, and consequently there is no limitation on assessment under section 6501(c)(1);

(2)  did petitioners receive $222,735 in unreported income from HRDC Construction (HRDC), a partnership owned 100 percent by petitioners, in 1994?  We hold that they did;

(3)  are petitioners entitled to deductions in excess of those allowed by respondent in the notice of deficiency?  We hold that they are not;

(4)  are unreported bank deposits of $30,953.94 in 1995 taxable to petitioners?  We hold that they are;

(5)  is petitioner Dorene Payne (Mrs. Payne) entitled to innocent spouse relief under section 6015?  We hold that she is not; and

(6)  are petitioners liable for the fraud penalty under section 6663?  We hold that they are liable for the fraud penalty with respect to the unreported income they received from HRDC, but not with respect to their unreported bank deposit income.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts are stipulated.  The stipulation of facts, the supplemental stipulation of facts, and the attached exhibits are incorporated herein by this reference.  At the time the petition was filed, petitioners resided in Minneapolis, Minnesota.

Petitioners operated HRDC as a partnership in 1993 and 1994, and as a corporation subject to the provisions of subchapter S in 1995.  HRDC was in the business of roof repair for commercial properties.  HRDC was owned during the years in issue as follows:

|                           | 1993 | 1994     | 1995 |
| ------------------------- | ---- | -------- | ---- |
| Wayne Payne (Mr. Payne)   | 50%  | 50.0658% | 100% |
| Mrs. Payne                | 50   | 49.9342  | 0    |

HRDC operated from offices in a building owned by petitioners.  During the years in issue, Mr. Payne was responsible for HRDC's roofing work, and Mrs. Payne worked in HRDC's offices.  Mrs. Payne and Cari Enerson (Ms. Enerson) maintained HRDC's books and records.  Ms. Enerson was hired by HRDC as its bookkeeper after her graduation from high school.  Before beginning her employment with HRDC, Ms. Enerson's work experience consisted of waitressing.

Before HRDC received a roofing job, Mr. Payne or one of three employees of HRDC visited a potential customer's site and prepared a bid for roof repair work.  The bid was then sent to the potential customer.  If the customer accepted the bid, he

would sign the bid and send it back to HRDC. The accepted bid would then be recorded by Mrs. Payne or Ms. Enerson in a sales journal. Typically, a customer would pay half the cost of the job when work began on the job, and the remainder at its completion. The payments HRDC received were supposed to be recorded in an accounts receivable journal, but not all payments were so recorded. Often HRDC would receive payment for jobs recorded in the sales journal for one year in the following year. The payments were generally recorded in the accounts receivable journal for the year in which they were received.

During some of Mr. Payne's or the other employees' visits to potential customers' sites, small jobs would arise that could be completed on the spot. The customers generally paid the HRDC employee on the spot for such jobs. These small jobs were referred to at HRDC as "extras", and were recorded in an extras journal. Payment for the extras was usually made by check. The extra payments were not recorded in HRDC's sales or accounts receivable journals.

When HRDC received checks for its services, Mrs. Payne and Ms. Enerson deposited certain of the checks into HRDC's business checking account and placed other checks in a drawer at HRDC's offices. For the most part, the checks that were not deposited into HRDC's bank account were those received in payment for the extras. Mr. Payne or another employee of HRDC would then cash

these checks at the Money Exchange, a check-cashing store.  The
Money Exchange charged a fee of 2.5 percent of each check's
value.  HRDC's bank did not charge a fee to deposit checks.
Generally, if an employee other than Mr. Payne had performed the
work on an extra, one-third of the payment went to that employee,
one-third of the payment went to materials, and one-third of the
payment was retained by HRDC.  If Mr. Payne performed the extra,
he kept 100 percent of the payment.  Occasionally, Ms. Enerson
would cash the checks and send Mr. and Mrs. Payne the cash while
they were on vacation in Florida.  The amounts of the checks
cashed by Mr. Payne were not deposited into HRDC's bank account
and were not reported as income on HRDC's Federal income tax
returns.  In 1993, Mr. Payne cashed a total of $83,623.87 in
checks at the Money Exchange.  In 1994, Mr. Payne cashed a total
of $98,258.21 in checks made out to HRDC at the Money Exchange.
HRDC's extra journal for 1994 reflects that Mr. Payne performed
extras of $45,060.50.  HRDC's extra journal for 1995 reflects
that Mr. Payne performed extras of $36,989. The extras were not
reported in HRDC's sales journal.

Vern Gunderson (Mr. Gunderson), a tax return preparer,
prepared petitioners' 1993 and 1994 joint income tax returns.
Mr. Gunderson also prepared HRDC's 1993 and 1994 partnership
returns, and HRDC's 1995 S corporation return.  Tim Campion (Mr.
Campion), an accountant, prepared petitioners' joint 1995 income

tax return and an amended 1995 S corporation return for HRDC.  On its 1994 partnership return, HRDC elected the cash method of accounting for tax purposes.  Although it appears that the cash method was used in 1993 and 1995 as well, HRDC's 1993 partnership return and 1995 S corporation return do not reflect which methods of accounting were elected in those years.

Ms. Enerson was employed by HRDC from 1985 until April 1995. During the time Ms. Enerson was employed by HRDC, Mr. Gunderson was HRDC's tax return preparer.  At HRDC, part of Ms. Enerson's job was to gather information for Mr. Gunderson to complete the returns.  Mrs. Payne helped Ms. Enerson gather this information. Ms. Enerson and Mrs. Payne did not provide Mr. Gunderson with any information about the money earned from extras; they gave him only bank records to determine HRDC's income.  Mr. Gunderson signed HRDC's 1995 S corporation return on March 3, 1996.  Ms. Enerson testified that she provided the information for Mr. Gunderson to complete the 1995 return.  Ms. Enerson left HRDC in April 1995 to work for Mr. Gunderson.

After Ms. Enerson left HRDC, petitioners hired Mr. Campion to prepare their individual 1995 return and to amend HRDC's 1995 return.  Mr. Campion signed the amended return on June 4, 1996. Petitioners provided Mr. Campion only the original 1995 return (prepared by Mr. Gunderson) and HRDC's bank records to complete the amended return.  The amended 1995 return reported slightly

less gross receipts than HRDC's original return and claimed approximately $9,000 more in taxes and licenses paid. Mr. Campion testified that he amended the return to deal with payroll tax issues only.

Because petitioners' tax return preparers were provided only bank deposit records to calculate HRDC's income, HRDC did not report income from the extras for each year in issue. Petitioners reported flowthrough income derived from HRDC's reported income on their individual returns. For 1994, petitioners reported rental income from HRDC of $23,241 but HRDC did not report a corresponding expense.

In 1997, Mr. Payne met with respondent's revenue agent in connection with an audit of petitioners' and HRDC's 1993, 1994, and 1995 returns. When asked about the money earned from extras, Mr. Payne first told the revenue agent that 100 percent of the payment for each extra was kept by the employee performing the work. Mr. Payne also told the revenue agent that he did not know that any of HRDC's checks were cashed at the Money Exchange and that his employees must have stolen the checks from HRDC.

In 2001, Mr. Payne pleaded guilty to filing a false tax return under section 7206(1) for his 1994 individual Federal income tax return. On April 17, 2003, respondent issued a notice of deficiency to petitioners, determining deficiencies and civil fraud penalties under section 6663 for 1993, 1994, and 1995. The

deficiency determinations resulted from petitioners' alleged failure to report HRDC's income from the extras and certain other sales, as well as petitioners' unreported bank deposits. For 1994, respondent determined that petitioners received unreported income from HRDC of $222,735. Respondent also reduced petitioners' reported 1994 rental income by $23,241. The parties have stipulated that petitioners received $64,000 in unreported income from HRDC in 1993, and petitioners conceded that in addition unreported taxable deposits of $3,681 were made into petitioners' bank account in 1993. The parties have also stipulated that petitioners received $42,335 in unreported income from HRDC in 1995, and, in addition, unreported deposits of $30,953.94 were made into petitioners' bank account in 1995. The parties dispute, inter alia, whether petitioners underreported their 1994 income and whether the unreported bank deposits in 1995 were taxable.

OPINION

I.  Burden of Proof

The parties do not address the burden of proof. Respondent's revenue agent first met with petitioners in late 1997 after the start of his examination of their 1993, 1994, and 1995 returns. Because respondent's examination of petitioners' returns began before July 22, 1998, section 7491 does not apply. See Internal Revenue Service Restructuring and Reform Act of

1998, Pub. L. 105-206, sec. 3001(a), 112 Stat. 726.  Respondent's determinations in the notice of deficiency are presumed correct, and petitioners bear the burden of proving that respondent's determinations are incorrect.  Rule 142(a)(1).  Respondent has the burden of proof by clear and convincing evidence with respect to his determination of fraud.  Rule 142(a).

II.  Period of Limitations on Assessment

Petitioners contend that the 3-year period of limitations on assessment in section 6501(a) expired before respondent issued the notice of deficiency and respondent's assessment is barred.[2] Respondent argues that the period of limitations in section 6501(a) does not apply because petitioners filed false or fraudulent returns with the intent to evade tax for the years at issue.  Sec. 6501(c)(1).  Accordingly, our determination of whether the period of limitations remains open depends on whether petitioners committed fraud in the filing of their 1993, 1994, and 1995 returns.  The determination of fraud for purposes of section 6501(c)(1) is the same as the determination of fraud for purposes of the penalty under section 6663.  Neely v.

---

[2]After trial, respondent moved to amend his answer to assert, in the alternative, that the period of limitations remains open due to the 6-year period in sec. 6501(e). Petitioners objected to respondent's motion.  Because we find that petitioners committed fraud with respect to their 1993, 1994, and 1995 returns, we deny respondent's motion as moot.

Commissioner, 116 T.C. 79, 85 (2001); Rhone-Poulenc Surfactants & Specialties v. Commissioner, 114 T.C. 533, 548 (2000).

Mr. Payne's guilty plea under section 7206(1) for intentionally filing a false return does not in itself prove that section 6501(c) applies; respondent must show that petitioners intended to evade tax. See Wright v. Commissioner, 84 T.C. 636, 643 (1985). For Federal tax purposes, fraud entails intentional wrongdoing with the purpose of evading a tax believed to be owing. See Neely v. Commissioner, supra at 86. In order to show fraud, respondent must prove: (1) An underpayment exists; and (2) petitioners intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. See Parks v. Commissioner, 94 T.C. 654, 660-661 (1990).

A.   Underpayment of Tax

Respondent must first show by clear and convincing evidence that petitioners made an underpayment of tax in each of the years 1993, 1994, and 1995. For 1993 and 1995, petitioners have stipulated that they underreported their income from HRDC by $64,000 and $42,335, respectively. Petitioners testified that the payments for extras received by Mr. Payne were not deposited into HRDC's bank account, and HRDC's returns were prepared based on the deposits to its bank account. Petitioners conceded that they received at least one-third of the extras performed by other

employees of HRDC and that Mr. Payne was due to receive $45,060.50 in extras in 1994. The extras were not reported on HRDC's or petitioners' 1994 returns. Therefore, petitioners made underpayments of tax for 1993, 1994, and 1995.

   B.   Fraudulent Intent

Because direct evidence of fraud is rarely available, fraud may be proved by circumstantial evidence and reasonable inferences from the facts. Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989). Courts have developed a nonexclusive list of factors, or "badges of fraud", that demonstrate fraudulent intent. Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992). These badges of fraud include: (1) Understating income, (2) maintaining inadequate records, (3) implausible or inconsistent explanations of behavior, (4) concealment of income or assets, (5) failing to cooperate with tax authorities, (6) engaging in illegal activities, (7) an intent to mislead which may be inferred from a pattern of conduct, (8) lack of credibility of the taxpayer's testimony, (9) filing false documents, (10) failing to file tax returns, and (11) dealing in cash. Id.; see also Spies v. United States, 317 U.S. 492, 499 (1943); Recklitis v. Commissioner, 91 T.C. 874, 910 (1988). Although no single factor is necessarily sufficient to establish fraud, the combination of a number of factors constitutes persuasive evidence. Niedringhaus v. Commissioner, supra at 211.

Respondent must prove fraud for each year at issue. See id. at 210; Ferguson v. Commissioner, T.C. Memo. 2004-90.

Petitioners argue that they did not file their returns with fraudulent intent because they gave all of the responsibility regarding the preparation of HRDC's and their 1993, 1994, and 1995 returns to Ms. Enerson and their tax return preparers. They also claim that they did not have control over HRDC's books because Ms. Enerson maintained them and they did not review their returns before they were filed. We are unconvinced by petitioners' explanations. Petitioners rely heavily on the fact that Mr. Payne was a high school educated roofer and did not understand tax or business records. However, Ms. Enerson was hired soon after graduating from high school and had no experience as either a bookkeeper or a tax return preparer. Petitioners claim they had no knowledge of what Ms. Enerson provided to Mr. Gunderson for the preparation of their returns. The record does not support petitioners' claim. Petitioners met with Mr. Gunderson when they hired him and discussed the relevant aspects of the business. During this initial meeting, Mr. Gunderson asked if all the money from the business went into the bank accounts. Mr. Payne told him it did. As a result, Mr. Gunderson used only HRDC's bank records, which did not accurately reflect HRDC's income, to complete the returns. Because petitioners gave Mr. Campion the 1995 return prepared by Mr.

Gunderson and the bank records, the 1995 amended return also reported an incorrect amount of income.

In addition, Ms. Enerson credibly testified that she felt there was an understanding between herself and petitioners that she should not provide the information regarding income from the extras to Mr. Gunderson. Mrs. Payne helped Ms. Enerson gather information for Mr. Gunderson. Mrs. Payne testified that at some point she knew that Mr. Gunderson had requested only bank records. Mrs. Payne knew the extras were not deposited in the bank; she helped separate out the checks for Mr. Payne to cash. Petitioners' assertion of ignorance is merely an attempt to absolve themselves of blame by attributing responsibility to their bookkeeper.

In addition, petitioners' behavior with respect to their income shows multiple badges of fraud. Mr. Payne pleaded guilty under section 7206(1) to willfully filing a false tax return for 1994. As a result, Mr. Payne is estopped from arguing that he did not willfully file a false return for 1994. See Wright v. Commissioner, 84 T.C. at 639. Although the estoppel is not extended to petitioners' fraudulent intent to evade tax, respondent has shown clear and convincing evidence that petitioners intended to evade tax for the years in issue. HRDC's accounts receivable journal and bank deposit records both omitted the income HRDC earned from extras and did not accurately reflect

its income.  Petitioners' explanations of the understatements were implausible.  Their practice of cashing checks at the Money Exchange instead of their bank concealed income from their accountant and respondent, and enabled them to deal in cash.  Mr. Payne twice lied to respondent's revenue agents when asked how the income from the extras was distributed.  Respondent has shown clear and convincing evidence that petitioners filed their 1993, 1994, and 1995 returns with the intent to evade taxes. Therefore, the 3-year period of limitations under section 6501(a) does not apply to petitioners' 1993, 1994, and 1995 years, and respondent is not barred from assessing any deficiencies in petitioners' taxes for those years.

III.  Unreported Income in 1994 From HRDC

If a taxpayer has not maintained business records or its business records are inadequate, the Commissioner is authorized to reconstruct the taxpayer's income by any method that, in the Commissioner's opinion, clearly reflects that taxpayer's income. Sec. 446(b); Parks v. Commissioner, 94 T.C. at 658; A.J. Concrete Pumping, Inc. v. Commissioner, T.C. Memo. 2001-42.  The Commissioner's reconstruction need not be exact, but it must be reasonable.  A.J. Concrete Pumping, Inc. v. Commissioner, supra. Respondent argues that petitioners received $222,735 in unreported income from HRDC in 1994.  Respondent's reconstruction of petitioners' 1994 income is based on HRDC's sales and extras

journals and records of the checks cashed at the Money Exchange. Petitioners argue that the sales journal was inaccurate and disorganized because jobs that were contracted for in one year may have been completed and paid for in the next year.[3] The record does not reflect whether the amounts purportedly received in 1995 were included in the amount of income petitioners stipulated they received in 1995.

Respondent calculates petitioners underreported 1994 income as follows: Gross sales of $1,125,319.84 as reported in HRDC's sales journal, plus three accepted bids not listed totaling $12,825, plus extras of $45,060.50 performed by Mr. Payne, for total gross sales of $1,183,205.34 ($215,039.34 more than was reported on HRDC's 1994 return). HRDC's journals are a part of the record. The sales journal, which respondent used to reconstruct HRDC's income for 1994, very clearly and legibly lists the amounts charged for each job HRDC performed in 1994. The accounts receivable journal, which petitioners claim more clearly reflects HRDC's income, by contrast, is disorganized, illegible in places, and, according to Mrs. Payne's testimony, incomplete. Petitioners did not clarify the entries in the accounts receivable journal. Petitioners have not attempted to

---

[3]This argument leads us to conclude that HRDC used the cash method of accounting for tax purposes for 1993, 1994, and 1995.

explain which jobs or amounts, if any, were erroneously included in respondent's determination of HRDC's 1994 gross income.

Respondent determined that $12,825 was earned by HRDC in 1994 for jobs not listed in HRDC's records. Petitioners do not argue that the $12,825 should not be included as income. Petitioners stipulated that Mr. Payne was due to receive $45,060.50 in extras in 1994, and that Mr. Payne cashed $98,258.21 in checks payable to HRDC at the Money Exchange in 1994. With respect to extras that Mr. Payne performed, he testified that he personally kept all of the money when the checks were cashed and that no records were kept of the expenses of materials used for the extras.

The parties also stipulated that in 1994 HRDC deducted expenses of $20,526.22 that were never paid. As a result, HRDC's income was underreported by an additional $20,526.22. Because petitioners together owned 100 percent of HRDC in 1994, the incorrect deduction reduced their gross income by $20,526.22 as well. Petitioners do not argue that their 1994 income was not underreported by this amount.

Petitioners have not shown that respondent's reconstruction of their 1994 income using the sales journal was unreasonable and that they did not underreport the income they received from HRDC

in 1994 by the amount stated in the notice of deficiency.[4]  See

A.J. Concrete Pumping, Inc. v. Commissioner, supra.

IV.  HRDC's Deductions

Petitioners next argue that Mr. Payne received the cash from

the extras in lieu of rent payments from HRDC for its office

space, which petitioners owned in their personal capacities.  On

their personal income tax return for 1994, petitioners reported

rental income of $23,241 from HRDC for the use of the office

space, but HRDC did not claim a corresponding deduction for rent

paid on its 1994 return.  As a result, respondent reduced

petitioners' income for 1994 by $23,241.  At trial, Mr. Gunderson

testified that he completed the return on the basis of

information given to him by HRDC, which did not include canceled

checks for rent paid, and that it was a mistake to include the

income on petitioners' return.  Mr. Payne testified that there

were often times that HRDC owed rent to petitioners but could not

afford to pay it, such as in 1994.  He claimed that he thought

the amount reported as rental income on the 1994 return was

---

[4]The amount of the understatement determined in the notice
of deficiency is $222,735.  It is unclear how respondent arrived
at this figure, since the individual adjustments result in an
understatement of $232,565.56 ($215,039.34 unreported income plus
$20,526.22 disallowed deduction).  The difference does not appear
to be the result of respondent's negative adjustment to
petitioners' rental income, because that adjustment was made to
petitioners' adjusted gross income, not HRDC's income.  Because
respondent argues only the figure in the notice of deficiency,
petitioners are liable for tax on the lower amount.

approximately equal to the amounts of his extras for that year, but he did not look at either his personal return or HRDC's return before signing them.

The entire record does not support petitioners' claim that the extras were in lieu of rental income from HRDC. Mr. Gunderson was not instructed on the issue when he prepared the returns. He was not aware that extras existed until a few days before trial. Mr. Payne did not look at his returns before they were filed and was unclear and uncertain in his testimony regarding what he understood when he signed the returns. The extras Mr. Payne received in 1994 amounted to $45,060.50, almost double the amount of rental income reported on petitioners' 1994 personal return. In addition, HRDC did not report the extras as income. Respondent properly reduced petitioners' income by the reported rental amounts, and neither HRDC nor petitioners are entitled to claim deductions for rent paid (or the value of the extras) in excess of those claimed on HRDC's returns for 1993, 1994, and 1995.

Petitioners also argue that because the Money Exchange charged a 2.5-percent fee each time they cashed a check there, they are entitled to a deduction of 2.5 percent of Mr. Payne's extras. We disagree. The record shows that the Money Exchange did charge 2.5 percent of the value of each check cashed as a fee. However, in order to claim a deduction, the fees must be

ordinary and necessary expenses of running petitioners' business. See sec. 162. HRDC maintained a checking account to which petitioners could have deposited the money from the extras for no charge. Petitioners testified that they cashed checks at the Money Exchange because they knew the owner and it was within blocks of the office (although Mr. Payne, who did not drive, needed someone to drive him there each time he went). It is obvious that petitioners used the Money Exchange to avoid the inclusion of the income in their bank records. These reasons are not related, let alone ordinary and necessary, to HRDC's business. Therefore, petitioners are not entitled to deduct the cost of check-cashing fees.

## V. Unreported Additional Bank Deposits

Respondent adjusted petitioners' income by $3,681 for 1993 and $30,953.94 for 1995 for bank deposits made to their account in excess of all identified sources, including extras and income from HRDC. Bank deposits are prima facie evidence of income. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Petitioners stipulated that the deposits were made to their account, but they reserved the right to show that two of the deposits were from nontaxable sources. On brief, petitioners conceded that the $3,681 is includable in their 1993 income. At trial, Mrs. Payne testified that a deposit of $850 in 1995 was from Mr. Payne's sale of a gun to a sporting goods store. Mrs. Payne also

testified that a deposit of $5,658.33 in 1995 was from Mr. Payne's sale of old sporting goods at auction. The record contains copies of the two deposited checks. Neither Mrs. Payne nor Mr. Payne estimated Mr. Payne's cost for the items he sold. The record does not contain any additional evidence of Mr. Payne's basis in the items. Petitioners have not met their burden of proving that the two deposits were not taxable income to them. Therefore, $3,681 and $30,953.94 in additional bank deposits are includable in petitioners' income for 1993 and 1995, respectively.

VI.   Innocent Spouse Relief Under Section 6015

Petitioners argue that Mrs. Payne is entitled to relief from petitioners' joint liabilities for 1993, 1994, and 1995 under section 6015. Married taxpayers who elect to file a joint Federal income tax return are each jointly and severally liable for the entire tax due. Sec. 6013(a), (d)(3). A spouse may seek relief from joint and several liability under section 6015. A spouse may qualify for relief from liability under section 6015(b), or, if eligible, may allocate liability under section 6015(c). In addition, a spouse may seek equitable relief under section 6015(f) if relief is not available under section 6015(b) or (c). Under section 6015(f), respondent has the discretion to relieve a spouse (or former spouse) of joint liability if, taking into account all the facts and circumstances, it is inequitable

to hold that spouse liable for any deficiency or unpaid tax (or any portion of either) and that spouse is not eligible for relief under section 6015(b) or (c).  See sec. 6015(f).

Relief under section 6015(c) requires that the spouse requesting relief be no longer married to, be legally separated from, or not be a member of the same household as (for any part of the 12-month period ending on the date the election for relief was filed), the individual with whom the joint return was filed. Since Mr. and Mrs. Payne are not divorced, legally separated, or living separately, Mrs. Payne is ineligible for relief under section 6015(c).

The requesting spouse must fulfill five requirements in order to receive relief under section 6015(b):  (1) A joint return has been made for a taxable year; (2) on such return there is an understatement of tax attributable to erroneous items of the nonrequesting spouse; (3) the requesting spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement; (4) taking into account all the facts and circumstances, it is inequitable to hold the requesting spouse liable for the deficiency in tax for such year attributable to the understatement; and (5) the requesting spouse elected the benefits of section 6015(b) not later than the date which is 2 years after the date the Commissioner has begun collection activities with respect to the

requesting spouse. Mrs. Payne had reason to know in each year at issue that HRDC's returns understated its taxes. Mrs. Payne worked in HRDC's offices and was responsible, with Ms. Enerson, for maintaining HRDC's books and records. Mrs. Payne was aware that the money from the extras was not deposited into HRDC's bank account, and Mrs. Payne testified that at some point she knew the tax returns were based upon bank deposit records. She also helped Ms. Enerson compile information for Mr. Gunderson to complete the returns. In addition, petitioners owned HRDC in approximately equal shares in 1993 and 1994. Mr. and Mrs. Payne both worked for HRDC, and together they were involved in all aspects of the business. Because of their involvement, it is difficult to conclude that the unreported income received by petitioners through HRDC in 1993 and 1994 was not attributable to one spouse or the other. Therefore, Mrs. Payne is not entitled to relief under section 6015(b).

Section 6015(f) gives the Commissioner discretion to grant innocent spouse relief to a requesting spouse if relief is not available under subsection (b) or (c) and, taking into account all the facts and circumstances, it is inequitable to hold the requesting spouse liable for any unpaid tax or deficiency. We review the Commissioner's denial of relief under subsection (f) for an abuse of discretion. Washington v. Commissioner, 120 T.C. 137, 146 (2003). Rev. Proc. 2000-15, 2000-1 C.B. 447, contains

guidelines that are considered in determining whether an individual qualifies for relief under section 6015(f).[5]  Rev. Proc. 2000-15, sec. 4.01, 2000-1 C.B. at 448, lists seven threshold conditions that must be satisfied before the Commissioner will consider a request for relief under section 6015(f).  One of these threshold factors is that the requesting spouse did not file the return with fraudulent intent.  Id.

We held above that petitioners filed their 1993, 1994, and 1995 returns fraudulently with the intent to evade tax.  Respondent has shown that both petitioners committed fraud in the filing of the false returns.  Mrs. Payne was very involved in running the business, and we are convinced that she and Mr. Payne together operated HRDC in a way that concealed the cash they received to avoid tax.  Mrs. Payne knew that Mr. Payne cashed the payments from the extras; while working in HRDC's offices, she actively separated out the checks to be cashed from those to be deposited in the bank.  The cash was used for Mr. and Mrs. Payne's personal expenses, such as when Ms. Enerson would cash

---

[5]On Aug. 11, 2003, the Commissioner issued Rev. Proc. 2003-61, 2003-2 C.B. 296, which superseded Rev. Proc. 2000-15, 2000-1 C.B. 447, effective for requests for relief filed on or after Nov. 1, 2003, and for those pending on Nov. 1, 2003, for which no preliminary determination letter has been issued as of Nov. 1, 2003.  The threshold requirement that a requesting spouse not having filed a return with fraudulent intent in order to be considered for relief under sec. 6015(f) is present in both revenue procedures.

checks and mail them cash during their vacations in Florida. Mrs. Payne controlled HRDC's books, which recorded the extras separate from HRDC's regular jobs. She attended a meeting with Mr. Payne and Mr. Gunderson to discuss the preparation of petitioners' tax returns at which Mr. Gunderson was told that all of HRDC's receipts were deposited into the bank account. She testified that she knew Mr. Gunderson had requested only bank records to complete the returns, and she helped Ms. Enerson gather information to send to Mr. Gunderson. Because we find that Mrs. Payne filed the returns for 1993, 1994, and 1995 fraudulently, respondent did not abuse his discretion in denying Mrs. Payne innocent spouse relief under section 6015(f).

## VII. Fraud Penalty Under Section 6663

If respondent shows that any portion of an underpayment is due to fraud, the entire underpayment will be treated as attributable to fraud for purposes of the penalty under section 6663(a), except any portion of the underpayment that petitioner establishes by a preponderance of the evidence is not attributable to fraud. See sec. 6663(b); Knauss v. Commissioner, T.C. Memo. 2005-6. As stated above, respondent has shown that petitioners committed fraud in filing their 1993, 1994, and 1995 returns. However, petitioners have shown by a preponderance of the evidence that their unreported bank deposits were not due to fraud. Our finding of fraud relies in part on petitioners'

practice of concealing income by providing only bank statements and records to their tax return preparer and converting checks into cash at the Money Exchange. Petitioners did not employ this practice with respect to the unreported deposits; instead, they provided their bank information to their tax return preparers. Therefore, the fraud penalty does not apply to the deficiency amounts resulting from petitioners' unreported bank deposit income in 1993 and 1995. Petitioners have not shown that any other portion of the deficiencies should not be subject to the fraud penalty. Therefore, the remainder of the deficiencies for 1993, 1994, and 1995 is subject to the fraud penalty.

To reflect the foregoing, concessions of the parties, and to give effect to the stipulations by the parties,

<u>Respondent's Motion for Leave to Amend the Answer to Conform the Pleadings to the Proof is denied as moot, and Decision will be entered under Rule 155</u>.