T.C. Memo. 2012-293

UNITED STATES TAX COURT

JOHN ALLEN HATLING AND KATHLEEN ANN HATLING, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20709-10.             Filed October 22, 2012.

John Allen Hatling and Kathleen Ann Hatling, pro sese.

<u>Christina L. Cook</u> and <u>John Schmittdiel</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>: In a notice of deficiency dated June 8, 2010, respondent

determined deficiencies in petitioners' Federal income tax of $15,665, $28,527,

$40,038, and $26,046 for 2001, 2002, 2003, and 2004, respectively. Respondent

**[\*2]** also determined civil fraud penalties under section 6663(a)[1] of $10,245,

$20,852, $30,028, and $15,097 for 2001, 2002, 2003, and 2004, respectively, with

respect to John Allen Hatling. After concessions,[2] the sole issue for decision is

whether Mr. Hatling is liable for civil fraud penalties for 2001-03.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of

facts is incorporated herein by this reference. Petitioners resided in Minnesota when

they filed their petition.

I.    Background

Mr. Hatling, a licensed attorney,[3] has been practicing law in Minnesota for

approximately 25 years.[4] During the years at issue Mr. Hatling operated his own

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code (Code) in effect for the years at issue, and Rule references are to the Tax Court Rules of Practice and Procedure. Some monetary amounts have been rounded to the nearest dollar.

[2]Petitioners concede the deficiencies for 2001-04 as determined by respondent in the notice of deficiency. Petitioners also concede the sec. 6663(a) civil fraud penalty for 2004.

[3]Mr. Hatling was suspended from the practice of law for a period of 45 days as a result of his conviction for willfully failing to pay Minnesota State income tax for 2003. See infra p. 3.

[4]Mr. Hatling's work includes estate planning, and he has attended at least one seminar covering the representation of clients before the Internal Revenue Service

(continued...)

**[*3]** law practice. Kathleen Hatling was not employed outside the home during the years at issue.

In 2008 Mr. Hatling pleaded guilty to a felony charge for willfully failing to pay Minnesota State income tax for 2003 in violation of Minnesota law.[5] In his guilty plea Mr. Hatling admitted that his State income tax return included a "claim of right" deduction and that, because of this claimed deduction, he reported no income tax owed on his 2003 State return.

II. Petitioners' Tax Reporting

Mr. Hatling prepared petitioners' Federal income tax return for each of the years at issue. Petitioners filed Forms 1040, U.S. Individual Income Tax Return, for 2001-03. On each of their Forms 1040 they reported zero taxable income.

For each year petitioners' return included a Schedule C, Profit or Loss From Business, with respect to Mr. Hatling's law practice. On those Schedules C Mr. Hatling reported gross receipts of $187,741, $261,448, and $173,278 for 2001,

---

[4](...continued)
(IRS) and the use of alternative payment options, such as offers-in-compromise.

[5]Minn. Stat. Ann. sec. 289A.63(1)(b) (West 2007 & Supp. 2012) provides that "[a] person required to pay or to collect and remit a tax, who willfully attempts to evade or defeat a tax law by failing to do so when required, is guilty of a felony."

[*4] 2002, and 2003, respectively.  Mr. Hatling deducted various business expenses totaling $185,047, $259,404, and $96,773 for 2001, 2002, and 2003, respectively.  The business expense deductions included other expenses of $99,308, $116,724, and $39,950 for 2001, 2002, and 2003, respectively.  Mr. Hatling reported Schedule C net profits of $2,694, $2,044, and $924 for 2001, 2002, and 2003, respectively.

Mr. Hatling attached to each of petitioners' returns a disclosure form--Form 8275, Disclosure Statement, for 2001, and Forms 8275-R, Regulation Disclosure Statement, for 2002-03.  On those Forms 8275 and 8275-R Mr. Hatling explained that he deducted on his Schedules C expenses of $99,308, $91,726, and $39,950 for 2001, 2002, and 2003, respectively, as claim of right deductions for white citizens.[6]  He further explained that the amounts deducted represented "compensation for personal services actually rendered" pursuant to section 1341(a), that he claimed the deductions on the basis of "a common-law immunity that renders any money earned from the right of accession immune from taxation", and that the Code "defined this immunity as a 'white citizen' right".  Although Mr. Hatling testified he did not believe that there were any available favorable tax

---

[6]In preparing petitioners' tax returns Mr. Hatling claimed a claim of right deduction for each year in the amount of gross income that was not offset by business expense deductions.

**[\*5]** deductions that were based on race, he claimed these deductions on petitioners'

returns to delay the assessment and payment of petitioners' correct Federal income

tax liabilities.

III.    Notice of Deficiency

On June 8, 2010, respondent issued to petitioners the notice of deficiency for

2001-04.  Using the bank deposits method of reconstructing income, respondent

determined that Mr. Hatling failed to report Schedule C gross receipts of $7,131 and

$62,059 for 2001 and 2003, respectively.  Respondent also determined that Mr.

Hatling overreported his gross receipts by $1,577 for 2002.  Respondent disallowed

$79,540, $143,679, and $32,004[7] of Mr. Hatling's claimed business expense

deductions for 2001, 2002, and 2003, respectively.[8]

---

[7]For 2003 in addition to disallowing a claimed business expense deduction of
$32,004, respondent also disallowed $2,323 of claimed cost of goods sold.

[8]On his 2001 Schedule C Mr. Hatling reported the following as other
expenses:  "Education, Professional" expenses of $793, "Contributions" of $150,
"Dues & Subscriptions" of $2,376, "Banking & Credit Charges" of $672, "Legal
Library" expenses of $2,791, "Interest" expenses of $6, "Postage" expenses of
$1,599, "Telephone" expenses of $11,008, and expenses of $79,913 under an entry
entitled "See Line 48 Other Expenses", for total other expenses of $99,308.  On the
2001 Form 8275, however, Mr. Hatling purported to claim a claim of right
deduction of $99,308.  In the notice of deficiency respondent determined that only
$79,913 of Mr. Hatling's claimed other business expenses deduction, rather than the
entire amount, was attributable to his claim of right deduction.  Respondent
(continued...)

[**\*6**] Accordingly, respondent determined that Mr. Hatling had Schedule C net profits of $89,365, $144,146, and $167,410 for 2001, 2002, and 2003, respectively.[9] Respondent also determined that Mr. Hatling was liable for civil fraud penalties under section 6663(a) and that underpayments of $13,660, $27,803, and $40,038 for 2001, 2002, and 2003, respectively, were due to fraud.

---

[8](...continued)
categorized the remainder, $19,395, as other business expenses and disallowed $2,539 of this amount.

On his 2002 Schedule C Mr. Hatling reported the following as other expenses:  "Education, Professional" expenses of $897, "Contributions" of $922, "Dues & Subscriptions" of $2,223, "Banking & Credit Charges" of $688, "Legal Library" expenses of $6,272, "Interest" expenses of $5,702, "Postage" expenses of $1,322, "Telephone" expenses of $6,972, and expenses of $91,726 under an entry entitled "Claim of Right Pursuant to IRC 1341(a)(5)(B) See Form 8275 attached", for total other expenses of $116,724.  In the notice of deficiency respondent determined that Mr. Hatling deducted $91,726 as a claim of right deduction.  Respondent categorized the remainder, $24,998, as other business expenses and disallowed $6,624 of this amount.

On his 2003 Schedule C Mr. Hatling reported other expenses of $39,950 under an entry entitled "Claim of right pursuant to IRC § 1341(a)(5)(B).  See Form 8275 attached".  Respondent disallowed the entire amount of the claimed other expenses Mr. Hatling deducted.

[9]For 2001 respondent also determined that petitioners failed to report $2,820 in gross profits from rents and $80 of dividend income.  For 2002 respondent also determined that petitioners failed to report $27,166 in gross profits from rents, $23 of dividend income, and $376 of capital gain.  For 2003 respondent also determined that petitioners failed to report $6,759 in gross profits from rents, $63 of dividend income, and $159 of capital gain.

**[*7]**                                    OPINION

If any part of an underpayment on a return is due to fraud, section 6663(a) imposes on the taxpayer filing the return a penalty equal to 75% of the part of the underpayment attributable to fraud.  To prove that a taxpayer is liable for the penalty, the Commissioner must prove by clear and convincing evidence that (1) an underpayment of tax exists, and (2) some part of the underpayment is attributable to fraud.  See secs. 6663(a), 7454(a); Rule 142(b); DiLeo v. Commissioner, 96 T.C. 858, 873 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992).  If the Commissioner proves that any part of an underpayment is attributable to fraud, then the entire underpayment shall be treated as attributable to fraud unless the taxpayer shows by a preponderance of the evidence that a part was not so attributable.[10]  See sec. 6663(b).

I.      Underpayment of Tax

In the notice of deficiency respondent determined deficiencies in petitioners' joint 2001, 2002, and 2003 Federal income tax of $15,665, $28,527, and $40,038, respectively.  Petitioners have conceded that they underpaid their tax by these amounts, and we so find.  See Norris v. Commissioner, T.C. Memo.

---

[10]In the case of a joint return the sec. 6663(a) penalty does not apply with respect to a spouse unless some portion of the underpayment is due to the fraud of that spouse.  See sec. 6663(c).

**[\*8]** 2011-161, slip op. at 11-12; <u>Payne v. Commissioner</u>, T.C. Memo. 2005-130, slip op. at 10-11, <u>aff'd</u>, 211 Fed. Appx. 541 (8th Cir. 2007).

II.    <u>Fraudulent Intent</u>

    A.    <u>Introduction</u>

If fraud is determined for multiple taxable years, the Commissioner's burden "applies separately for each of the years." <u>Temple v. Commissioner</u>, T.C. Memo. 2000-337, slip op. at 24-25, <u>aff'd</u>, 62 Fed. Appx. 605 (6th Cir. 2003).  The Commissioner satisfies this burden by showing that "the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead or otherwise prevent the collection of taxes." <u>DiLeo v. Commissioner</u>, 96 T.C. at 874; <u>see also</u> <u>Morse v. Commissioner</u>, 419 F.3d 829, 832 (8th Cir. 2005), <u>aff'g</u> T.C. Memo. 2003-332.  Fraud "does not include negligence, carelessness, misunderstanding or unintentional understatement of income." <u>United States v. Pechenik</u>, 236 F.2d 844, 846 (3d Cir. 1956).

The existence of fraud is a question of fact to be resolved upon consideration of the entire record.  <u>See</u> <u>DiLeo v. Commissioner</u>, 96 T.C. at 874. Fraud is never presumed and must be established by independent evidence of fraudulent intent.  <u>See</u> <u>Baumgardner v. Commissioner</u>, 251 F.2d 311, 322 (9th Cir. 1957), <u>aff'g</u> T.C. Memo. 1956-112.  Fraud may be shown by circumstantial

[*9] evidence because direct evidence of the taxpayer's fraudulent intent is seldom available.  See Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989); Gajewski v. Commissioner, 67 T.C. 181, 199-200 (1976), aff'd without published opinion, 578 F.2d 1383 (8th Cir. 1978).  The taxpayer's entire course of conduct may establish the requisite fraudulent intent.  See Stone v. Commissioner, 56 T.C. 213, 223-224 (1971).  Any conduct likely to mislead or conceal may constitute an affirmative act of evasion, see Spies v. United States, 317 U.S. 492, 499 (1943), and an intent to mislead may be inferred from a pattern of such conduct, see Webb v. Commissioner, 394 F.2d 366, 379 (5th Cir. 1968), aff'g T.C. Memo. 1966-81.  However, fraud is not proven when a court is left with only a suspicion of fraud, and even a strong suspicion is not sufficient to establish a taxpayer's liability for the fraud penalty.  See Olinger v. Commissioner, 234 F.2d 823, 824 (5th Cir. 1956), aff'g in part, rev'g in part on another ground T.C. Memo. 1955-9; Davis v. Commissioner, 184 F.2d 86, 87 (10th Cir. 1950); Green v. Commissioner, 66 T.C. 538, 550 (1976).

B.    Badges of Fraud

Because it is difficult to prove fraudulent intent by direct evidence, the Commissioner may establish fraud by circumstantial evidence, which includes various "badges of fraud" (hereinafter, factors) on which the courts often rely.  See

**[*10]** Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), aff'g T.C. Memo. 1984-601; DiLeo v. Commissioner, 96 T.C. at 875. These factors focus on whether the taxpayer engaged in certain conduct that is indicative of fraudulent intent, such as: (1) understating income; (2) failing to maintain adequate records; (3) offering implausible or inconsistent explanations; (4) concealing income or assets; (5) failing to cooperate with tax authorities; (6) engaging in illegal activities; (7) providing incomplete or misleading information to the taxpayer's tax return preparer; (8) offering false or incredible testimony; (9) filing false documents, including filing false income tax returns; (10) failing to file tax returns; and (11) engaging in extensive dealings in cash.[11] See Bradford v. Commissioner, 796 F.2d at 307-308; Parks v. Commissioner, 94 T.C. 654, 664-665 (1990); Recklitis v. Commissioner, 91 T.C. 874, 910 (1988); Lipsitz v. Commissioner, 21 T.C. 917 (1954), aff'd, 220 F.2d 871 (4th Cir. 1955); see also Morse v. Commissioner, T.C. Memo. 2003-332, slip op. at 8-9. The existence of any one factor is not dispositive, but the existence of several factors is persuasive circumstantial evidence of fraud. See Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992); Petzoldt v. Commissioner, 92 T.C. at 700. We may also consider

---

[11]These factors are not exclusive. See Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992).

**[\*11]** a taxpayer's intelligence, education, and tax expertise in deciding whether the taxpayer acted with fraudulent intent. Iley v. Commissioner, 19 T.C. 631, 635 (1952).

Respondent determined that Mr. Hatling's underpayments of $13,660, $27,803, and $40,038 for 2001, 2002, and 2003, respectively, were due to fraud. Respondent contends that Mr. Hatling has admitted his fraudulent intent with respect to these underpayments by virtue of petitioners' stipulation that Mr. Hatling claimed the claim of right deductions on petitioners' joint returns to delay the assessment and payment of Federal income tax, despite his knowledge that no claim of right deduction was available. Mr. Hatling's testimony corroborated petitioners' stipulation.

While we give some weight to Mr. Hatling's stipulation in our analysis, we do not rely exclusively on the stipulation in deciding whether the fraud penalty should apply. Respondent also contends that the following factors are present in this case: (1) Mr. Hatling underreported petitioners' income for 2001-04; (2) Mr. Hatling failed to maintain adequate records for 2001-03; and (3) Mr. Hatling filed false return documents for 2001-03. Additionally, respondent contends that Mr. Hatling's conviction for willfully failing to pay Minnesota income tax provides

**[\*12]** evidence of fraud. Because we decide the existence of fraudulent intent on the basis of the entire record, we analyze each factor below.

        1.       <u>Understating Income</u>

A pattern of substantially underreporting income for several years is strong evidence of fraud, particularly if the understatement is not satisfactorily explained or is not due to innocent mistake. See <u>Holland v. United States</u>, 348 U.S. 121, 137-139 (1954); <u>Spies</u>, 317 U.S. at 499; <u>Webb v. Commissioner</u>, 394 F.2d at 379; <u>Kurnick v. Commissioner</u>, 232 F.2d 678, 681 (6th Cir. 1956), <u>aff'g</u> T.C. Memo. 1955-31; <u>Morse v. Commissioner</u>, slip op. at 9. As this Court has stated: "[i]t is well settled that a fraudulent understatement of income can be accomplished by means of an overstatement of deductions." <u>Drobny v. Commissioner</u>, 86 T.C. 1326, 1349 (1986), <u>aff'd</u>, 113 F.3d 670 (7th Cir. 1997); <u>see also</u> <u>Foxworthy, Inc. v. Commissioner</u>, T.C. Memo. 2009-203, slip op. at 49.

On petitioners' tax returns for 2001-03 Mr. Hatling reported zero taxable income. Respondent also introduced into evidence petitioners' 2004 Federal income tax return, on which Mr. Hatling reported zero taxable income. Mr. Hatling underreported petitioners' taxable income by $38,814, $82,543, $127,788, and $91,121 for 2001, 2002, 2003, and 2004, respectively.

**[\*13]** Petitioners contend that Mr. Hatling did not understate petitioners' income for the years at issue because he accurately reported gross receipts with respect to his law practice on the relevant Schedules C. Petitioners correctly contend that Mr. Hatling reported a substantial portion of the gross receipts reflected on the law practice's profit and loss statements for the years at issue.[12] However, Mr. Hatling also claimed significant business expense deductions, including the claim of right deductions. Mr. Hatling has admitted that he knew he was not entitled to the deductions he claimed under his claim of right theory and that he claimed the deductions to delay payment of Federal income tax. Thus the record not only establishes that Mr. Hatling did not incur expenses to the extent claimed but also that Mr. Hatling deliberately claimed false deductions to delay payment of his

---

[12]For each of the years at issue the record contains two versions of profit and loss statements with respect to Mr. Hatling's law practice: a copy petitioners provided during the audit process (audit P&L statement) and a copy they provided during formal discovery (discovery P&L statement). Petitioners reported gross receipts with respect to Mr. Hatling's law practice on the documents as follows:

| Year | Audit P&L statement | Discovery P&L statement | Return |
|------|---------------------|-------------------------|--------|
| 2001 | $187,627 | $187,741 | $187,741 |
| 2002 | 261,448 | 146,796 | 261,448 |
| 2003 | 188,940 | 191,836 | 173,278 |

**[\*14]** tax.[13]  In claiming substantial deductions that he knew to be false, Mr.

Hatling deliberately understated petitioners' income for the years at issue.

Compare Ochs v. Commissioner, T.C. Memo. 1986-595 (finding fraudulent intent

where a taxpayer claimed dependency exemptions for his nonexistent children)

with Porter v. Commissioner, T.C. Memo. 1986-70 (finding no fraudulent intent

---

[13]Petitioners also appear to contend the claim of right deductions were not fraudulent because the deductions clearly were impermissible and therefore Mr. Hatling could not have been attempting to conceal his income.  We reject petitioners' contention for several reasons.  First, the Code provides that taxpayers may deduct from income an amount received under a claim of right.  See sec. 1341.  Petitioners have failed to convince us that simply by including the claim of right deductions on their returns, they disclosed that the deductions they were claiming were clearly improper.  Second, while the U.S. Court of Appeals for the Eighth Circuit, to which an appeal in this case would lie absent a stipulation to the contrary, see sec. 7482(b)(1)(A), (2), has not addressed the issue of whether a taxpayer's disclosure may preclude a finding of fraudulent intent, at least two other Courts of Appeals, as well as this Court, have held that disclosure does not preclude a finding of fraudulent intent, see Edelson v. Commissioner, 829 F.2d 828, 832-833 (9th Cir. 1987), aff'g T.C. Memo. 1986-223; Granado v. Commissioner, 792 F.2d 91, 93-94 (7th Cir. 1986), aff'g T.C. Memo. 1985-237; Price v. Commissioner, T.C. Memo. 1996-204; Cloutier v. Commissioner, T.C. Memo. 1994-558.  But see Zell v. Commissioner, 763 F.2d 1139, 1144 (10th Cir. 1985) ("Clearly, where the taxpayer has informed the IRS of his refusal to file or to pay, and of the reasons for that refusal, the government has not been deceived.  In addition, the disclosure clearly negates any intent to deceive."), aff'g T.C. Memo. 1984-152; Raley v. Commissioner, 676 F.2d 980, 983-984 (3d Cir. 1982) (holding that a taxpayer did not act with fraudulent intent because he "went out of his way to inform every person involved in the collection process that he was not going to pay any federal income taxes"), rev'g T.C. Memo. 1980-571.  Third, petitioners deducted the claim of right deductions with the intent of underreporting their taxable income and evading their obligation to pay their proper income tax liabilities when due.

**[\*15]** where a taxpayer overstated his deductions but introduced sufficient evidence to show that he incurred substantial deductible expenses).

Accordingly, we find that Mr. Hatling substantially underreported petitioners' income for 2001-04.  Given the substantial amounts underreported, Mr. Hatling's pattern of underreporting income, and the lack of any credible explanation for the underreporting, Mr. Hatling's understatements are persuasive evidence of fraudulent intent.  See, e.g., Morse v. Commissioner, 419 F.3d at 832.

### 2.      Failing To Maintain Adequate Records

The failure to maintain adequate business records supports a finding of fraud. See Truesdell v. Commissioner, 89 T.C. 1280, 1302-1303 (1987); see also Grosshandler v. Commissioner, 75 T.C. 1, 20 (1980).  "Inadequate or non-existent records are also a badge of fraud."  Lollis v. Commissioner, 595 F.2d 1189, 1192 (9th Cir. 1979), aff'g T.C. Memo. 1976-15.

Mrs. Hatling testified that Mr. Hatling and his office manager prepared annual profit and loss statements for Mr. Hatling's law practice.  The record contains copies of profit and loss statements with respect to Mr. Hatling's law practice for 2001-03.  The audit P&L statements bear the following dates in the upper left-hand corner:  for 2001, March 25, 2002; for 2002, October 23, 2003; and for 2003, March 23, 2004.

[*16] For 2001-03 the amounts of gross receipts shown on the profit and loss statements closely correspond with the amounts of gross receipts Mr. Hatling reported on his Schedules C. See supra note 11.[14] Additionally, the amounts of expenses shown on the profit and loss statements closely correspond with the amounts of other business expenses (other than the claim of right deductions) that Mr. Hatling reported on his Schedules C. See supra note 7. Respondent allowed a significant amount of Mr. Hatling's other business expenses.

The record supports a finding that in the course of operating his law practice Mr. Hatling maintained records of his business income and expenses. Respondent has failed to produce sufficient evidence to convince us that Mr. Hatling's business records were inadequate. Accordingly, we decline to find that Mr. Hatling failed to maintain adequate records.

---

[14]With respect to 2002 the gross receipts shown on the audit P&L statement, $261,448, equal the gross receipts Mr. Hatling reported on the 2002 Schedule C. However, the gross receipts shown on the discovery P&L statement for 2002 are $146,796. The difference is attributed to the fact that on the audit P&L statement, Mr. Halting reported fee income of $261,448, but on the discovery P&L statement, he reported fee income of only $103,130. Petitioners have not introduced any evidence to explain this discrepancy. While this discrepancy is suspect, we note that the audit P&L statement appears accurate and the expense amounts on the discovery P&L statement are generally consistent with the expense amounts shown on the audit P&L statement and Mr. Hatling's Schedule C. Accordingly, this discrepancy does not compel us to find that petitioners failed to maintain adequate books and records.

**[*17]**     3.     Filing False Documents

Fraudulent intent may be inferred when a taxpayer files a tax return intending to conceal, mislead, or prevent the collection of tax. See Spies, 317 U.S. at 499. Filing false documents with the IRS constitutes "an 'affirmative act' of misrepresentation sufficient to justify the fraud penalty." Zell v. Commissioner, 763 F.2d 1139, 1146 (10th Cir. 1985), aff'g T.C. Memo. 1984-152; see also Ernle v. Commissioner, T.C. Memo. 2010-237, slip op. at 9.

Mr. Hatling prepared and filed petitioners' tax returns for 2001-03. On each of the Schedules C attached to petitioners returns he claimed a substantial claim of right deduction. He has admitted that he knew he was not entitled to the claim of right deductions and that he claimed them to delay the assessment and collection of petitioners' Federal income tax. Accordingly, Mr. Hatling's filing of false income tax returns supports a finding of fraud.

     4.     Mr. Hatling's State Tax Conviction

While a taxpayer's conviction of a State income tax violation does not, by itself, establish fraudulent intent, such a conviction provides "evidence of a propensity to defraud." Lee v. Commissioner, T.C. Memo. 1995-597; see also Petzoldt v. Commissioner, 92 T.C. at 701-702. Mr. Hatling pleaded guilty to willfully attempting to evade or defeat payment of his State income tax for 2003.

**[*18]** Mr. Hatling's guilty plea and subsequent conviction supports a finding of fraud in this case.

III.   Conclusion

Respondent has proven by clear and convincing evidence that Mr. Hatling underpaid his joint tax liabilities for 2001-03.  Mr. Hatling's pattern of understating income, his filing of false documents, and his State tax conviction, when coupled with his stipulation and testimony regarding his intention to delay payment of his Federal income tax, provides clear and convincing evidence that part of the underpayment for each year was due to Mr. Hatling's fraud.  Therefore, petitioners bear the burden of showing by a preponderance of the evidence what portion of each underpayment, if any, is not attributable to fraud.  See sec. 6663(b).

Petitioners appear to contend that the portions of the underpayments arising from Mr. Hatling's claim of right deductions are not attributable to fraud because section 1341 provides for a claim of right deduction, and Mr. Hatling claimed the deductions in good faith.  Mr. Hatling testified, however, that he knew the deductions were impermissible and that, at the time of filing petitioners' returns, he expected the IRS to disallow the claim of right deductions and assess petitioners' tax and appropriate penalties.

[*19] Given Mr. Hatling's legal education and experience, we reject petitioners' argument that Mr. Hatling claimed the claim of right deductions in good faith. We also note that this Court and other courts have held similar claim of right arguments to be frivolous and groundless. See Pugh v. Commissioner, T.C. Memo. 2009-138; Sumter v. United States, 61 Fed. Cl. 517, 523-524 (2004); United States v. Pugh, 717 F. Supp. 2d 271 (E.D.N.Y. 2010). We find that petitioners have failed to introduce any credible evidence to prove that any specific portion of any underpayment was not attributable to fraud. The record overwhelmingly establishes that Mr. Hatling acted with fraudulent intent. Accordingly, we hold that Mr. Hatling is liable for the section 6663(a) fraud penalties as respondent determined.

We have considered all the other arguments made by the parties, and to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered for respondent.